CRANE RENTAL SERVICE and United States Fidelity and Guaranty Company

*v.*

J. L. RUTLEDGE.

410 S.W.2d 418.

(*Jackson*, April Term, 1966.)

Opinion filed December 9, 1966.

434

ROBERT M. FARGARSON, of counsel, NEELY, GREEN & FARGARSON, Memphis, for plaintiff in error.

CALVIN MCCULLOUGH, of counsel, WILKES, NEELY & MCCULLOUGH, and JAMES T. ALLISON, of counsel, CLIFTON & MACK, Memphis, for defendant in error.

Mr. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case. The Chancellor found in favor of the petitioner, Rutledge, that he had sustained an accidental injury that arose out of and in the course of his employment, and as a result of this injury he was permanently and totally disabled. From this decree, finding in favor of the employee, the employer and its insurance carrier have appealed. The sole question is whether or not there is material and substantial evidence to support the decree of the Chancellor.

The facts show that on August 28, 1964, Rutledge, who was a crane operator, reported to work at the premises of the appellant, Crane Rental Service. He had been hired by this company on the previous day to operate a crane on a job that appellant had on President's Island. Another employee of appellant, one Wann, was in charge of this particular job and met Rutledge and they began to get the crane ready to be transported to President's Island. The premises of the Crane Rental

Service were located at 2287 Frisco, Memphis, Tennessee, which is adjacent to the intersection of Airways Boulevard and Dunn Avenue. After Rutledge helped Wann make some minor adjustments and repairs on the crane, they were ready to transport this crane to President's Island. Wann was to drive the truck hauling the crane to the job site and instructed petitioner to drive a truck owned by the Crane Rental Service to which was attached a trailer used to carry a section of the boom. Part of the boom protruded over the end of the trailer. Its overall length was approximately 30 to 40 feet.

Rutledge had driven to work that morning in his own pick-up truck and parked it on the street next to the place of business of Crane Rental Service, and before he left driving this truck with part of the boom on it Wann directed Rutledge to pull his personal truck off the street and park it within Crane's premises.

Rutledge got into Crane's truck with the trailer carrying the boom and pulled out of the lot heading west on Dunn Avenue. Immediately after he had passed through the intersection of Airways Boulevard and Dunn Avenue, he pulled over to the curb on the northwest corner of the intersection and parked this truck with the boom on it. Witnesses say then that he got out of the truck and started walking back across the intersection from the west to the east side towards the premises of the Crane Rental Service, and while doing so an automobile being driven south on Airways Boulevard struck him and caused the injuries.

At the time he was thus struck he was no more than a minute and a half's walk from Crane's premises where his truck was parked. The record shows, too, that there

was no place to turn the truck and trailer around in this area just past the intersection, and it would have been much easier to have gotten out of the truck where it was parked and walked back than to have made an illegal turn, or proceed to a spot where he could have turned around. As a result of this accident he received severe head injuries which caused permanent brain damage, and at the time of the trial due to this brain damage, even though Rutledge was still alive, he was unable to testify.

Under such a state of facts the trial court found that Rutledge "has proven sufficient facts to warrant a reasonable inference that his injury arose out of and in the scope of his employment * * * he has therefore made out a prima facie case, which prima facie case has not been overcome by any evidence offered on behalf of the Defendant that the Petitioner was on a mission personal to himself and had departed from the scope of his employment."

The appellants cite as error that there is no material evidence to support the decree of the court to the effect that petitioner sustained an accidental injury arising out of and in the scope of his employment, and that to make such a finding, that such an injury did arise out of and in the scope of his employment, the finding is based on conjecture or speculation.

After reading this record we think that there was sufficient evidence herein upon which to base a prima facie case. The proof shows that the petitioner had started to work and was driving the defendant's truck to the job site; that after going less than a block he stopped his truck and started walking back to the defendant's premises. He was only a minute and a half's walk from the

defendant's premises when the accident occurred. The proof further shows that on these premises was parked the petitioner's personal truck in which there were a great many tools used to repair, adjust and maintain the operation of cranes, and the lunch of Rutledge was also found in this truck; and further it would have been extremely difficult to turn this truck around and ride back to the premises. It seems rather illogical to us that the truck should be turned around for the man to go back and get, inferentially, something that he had forgotten, when it took only a minute and a half to walk back to this place.

Of course, it is argued no one knows why petitioner was walking back to the premises. It seems to us in the absence of proof to the contrary that it was clearly inferable that the purpose of getting out of this truck and going back was to get something out of his truck or do something in connection with his employment.

■ We have here certain basic facts established and from these basic facts the trier of facts should clearly draw all reasonable and natural inferences. *Ward v. N. A. Rayon Corp.*, 211 Tenn. 535, 366 S.W.2d 134. It seems to us that to draw the inferences that the Chancellor did draw was the only logical conclusion that he could draw, and this did not constitute speculation and conjecture. These inferences were prima facie at least and, in the absence of proof to the contrary, the court was entitled to conclude that the injuries sustained arose out of and in the course of his employment. *Davis v. Wabash Screen Door Co.*, 185 Tenn. 169, 204 S.W.2d 87. When such is alleged and proven, this is sufficient upon which to base a valid judgment.

The appellant, among other cases, relies upon *Home Ice Co. v. Franzini*, 161 Tenn. 395, 32 S.W.2d 1032, in which it is held that an award cannot be based on mere conjecture of such facts. In the *Franzini* case the facts alleged or proven gave rise to more than one reasonable inference as to the cause of death, and this being true the Court concluded that there could be no recovery. In the *Franzini* case the employee was found to have died from an electric shock. As to how it occurred no one knew. His dead body was found at the place where he was supposed to work and the only reasonable inference was that Franzini climbed upon a transformer tower and there came in contact with a live wire, and as a result of the facts in this case this Court held the cause of his death ''could not have operated in connection with any known detail of deceased's employment.''

To the contrary the appellee relies strongly upon *Milstead v. Kaylor*, 186 Tenn. 642, 212 S.W.2d 610; *Shockley v. Morristown Produce and Ice Co.*, 158 Tenn. 148, 11 S.W.2d 900; and *Tennessee Chemical Co. v. Smith*, 145 Tenn. 532, 238 S.W. 97. These cases support the view that when an employee is found at his post of labor during the time that he is usually employed and there is no direct evidence as to the manner of his death, an inference may arise that the accident arose out of and in the course of his employment.

The present case is more in line with the *Shockley* case, supra, than any of our other reported decisions. In the *Shockley* case the trier of facts had found against compensation and this Court, speaking through the late Mr. Chief Justice Chambliss, reversed, holding that a prima facie case was made out and that the most logical inferences to be drawn from this prima facie case was

that the man had been injured while in the course and scope of his employment, and thus compensation was allowed. In this *Shockley* case the proof showed that Shockley had been assigned by his employer to ride a railroad car loaded with chickens which was being shipped to market in another state. His duties were to feed and water these chickens and to generally act as a caretaker of the railroad car and its contents until it reached its destination. After a stop en route to this destination, Shockley was found injured in a railroad car. Several cars ahead of defendant's car was a car filled with watermelons and the doors of this car were bulging. It was obvious that Shockley had gotten out of the car containing the chickens for his injuries were such that the wheels had passed over his feet, but no one knew why he got out of the car. Defendant there argued that it was to steal watermelons and that he was injured while getting back in the car when the train started to move causing him to lose his balance and he was thus injured. This opinion is a very detailed opinion and reaches the conclusion that in that case the employer had made out a prima facie case when he proved (1) the necessary relationship between employer and employee at the time of the injury and (2) when the employee dies from an accidental injury while on or about the place of employment and as a result of contact with an identical mechanical instrumentality with which he was employed to deal the injuries being of a character which preclude all question of intentional or self-inflicted injuries and when it is shown that there is no wilful misconduct on the part of the employee it is compensable.

Clearly, in this case Rutledge has shown by the proven facts sufficient connection between the employ-

ment and the accident since the employment required the employee to be where he was at the time of the injury, and there is no showing that the leaving of such employment was for anything other than something that would be beneficial to the employment. Rutledge was required to travel where he was traveling when he parked his truck and any risks of the road certainly were incidental to this employment. This being true, the case would come under ''a street risk exception'' to the general rule of liability for hazards common to the general community.

Counsel for the employer and insurance carrier argue that when one's job does not ordinarily take him into the street he cannot recover for an injury which occurs in the street because use of the street is not peculiar to his work but a general risk attendant upon anyone walking in traffic. Ordinarily if the employment occasions the employee's use of the street the risk of the street is the risk of the employment. *Central Surety & Insurance Corp. v. Court,* 162 Tenn. 477, 36 S.W.2d 907.

Mr. Larson in Volume 1 of his work on Compensation at page 75, sec. 9, among other things says:

''* * * A large number of courts have gone one step further by holding that injury from such risks is compensable regardless of whether such exposure is continuous or only occasional, so long as the exposure is in fact occasioned by the employment.''

He says, too, that ''(3) the actual-risk test, under which it is immaterial even whether the degree of exposure is increased, if in fact the employment subjected the employee to the hazards of the street, whether continuously or infrequently'' and that such a rule has now

become the majority rule. In sec. 9.30, page 76, following, the author of this treatise on Compensation sets forth numerous cases of street crossing, etc., of various and sundry kind of people, wherein their injuries are held compensable, and pages 80 and 81 of sec. 9.40 are taken up by showing various and sundry fact situations which clearly bring those of the instant case within those that are compensable when one is injured in thus crossing a street. Among the many cases cited is that of *Mueller Construction Co. v. Industrial Board*, 283, Ill. 148, 118 N.E. 1028, L.R.A. 1918F 891, which he quotes from thus:

"While it is undoubtedly true that the danger or liability of injury would have been greater if the nature of the employment of defendant in error had required him to cross the street several times a day, such liability would be one of degree only."

Thus it is that we, as did the Chancellor, arrive at the conclusion that when this man stopped and started to walk back, when he was, so to speak, a stone's throw away from his employer's premises, in the absence of proof to the contrary, it was clearly the inference that he was going back on his master's business. In other words, it had to do with something he had to get, either some machinery or his lunch before he could go over to President's Island. Even though this man was injured on the street this was a compensable injury. At page 82 of sec. 9.49 of Larson's, the author makes this very logical statement when he says:

"All these widely assorted employments have one feature in common; they are what you might call normally nontraveling occupations, in connection with which, however, some occasion has arisen to run across the

street, or some special service has been performed that brought the journey to or from work within the course of employment. A more stationary collection of vocations could hardly be imagined. Those injured were grade-school teachers, station agents, construction foremen, oil-well drillers, miners, bookkeepers and other clerical workers, store managers, watchmen, pipefitters, factory workers, household cooks, dairymen and school superintendents. Examples have been cumulated at this length to demonstrate that the modern street-risk doctrine cannot be explained or distinguished away as a narrow exception to the increased-risk doctrine based on special facts. Rather, it represents a basic shift in emphasis from the question whether the exposure was increased by the employment to the question whether the exposure was occasioned by the employment.''

The cases cited by the defendant in error such as *Jackson v. Clark and Fay,* 197 Tenn. 135, 270 S.W.2d 389, are easily distinguished from the present case. In the Jackson case the employee was killed when a tornado struck his employer's truck which was transporting him and his fellow employees from the job site to overnight accommodations furnished by the employer. The question there involved though is not the question here. Compensation in the Jackson case was largely denied on the theory that tornados were common to the neighborhood where the employee was traveling and not peculiar to him or his employer.

The same reasoning applies in the case of *Thornton v. RCA Service Co.,* 188 Tenn. 644, 221 S.W.2d 954, where an employee was attacked in a restaurant while ordering lunch. The attack was made by a stranger who was

drunk or insane, having no relation with the employer. That is not the question here, and factually this is a different lawsuit.

The same might be said of *Scott v. Shinn*, 171 Tenn. 478, 105 S.W.2d 103, where a delivery boy was shot while he was delivering drinks to a cafe that was being robbed. This case is more in line with the *Jackson v. Clark and Fay* case, supra, and it is distinguishable from the instant case.

■ We think here, under the now clear majority rule shown by the citation from Larson, that one who does get out of his car while in the course of his business to do something (a clear inference is that he was doing something necessary to the employment) for his employer and when injury or death is occasioned thereby and a prima facie case is made to this effect, this is compensable and will support an award. In *Riley v. Knoxville Iron Co.*, 178 Tenn. 107, 156 S.W.2d 398, this Court citing many other cases said that "accidental death within the Compensation Law is provable by circumstantial evidence just as any other fact may be proven. [Citing authority] * * * Circumstantial evidence may be sufficient to support a finding of fact or an award, and a finding or award may be based on inference drawn from circumstantial evidence."

■ We have continuously over the years followed this line of reasoning. Of course, the duty and obligation is always upon those petitioning for compensation to prove their case. We have been talking probably too much about prima facie cases and things of the kind herein. Counsel for the plaintiffs in error argues and assigns as error the finding of the trial judge that a cer-

tain Massachusetts statute with reference to when presumptions would be indulged in is applicable herein. This statute amounts to nothing more than the holding of our Court over the years in such cases as *Shockley, Milstead,* and others, that there are certain presumptions in these compensation cases when certain facts have been proven. Of course, the Massachusetts statute has nothing to do with the application of this law in this State, but we have applied its meaning judicially.

The law generally concerning presumptions in the type case now before us is cited in appellee's brief and says exactly what we have been trying to say herein, when the author in 100 C.J.S. Workmen's Compensation sec. 513b, says:

"ARISING OUT OF, AND IN COURSE OF, EMPLOYMENT

"A presumption may arise that an accidental injury received by an employee arose out of and in the course of employment, as where the employee is found injured or dead under circumstances indicating that injury or death occurred within the time and space limits of the employment; but such presumption is rebuttable and disappears on the introduction of evidence to the contrary.

\* \* \* \* \* \*

"Generally, the presumption is that an employee was following the usual course of carrying out the employer's business at the time of injury, and there is a natural presumption that one charged with the performance of a duty and injured while executing his superior's orders, is injured in the course of, or as a

consequence of, the employment. Likewise, in the absence of evidence to the contrary, the presumption or inference will be indulged in that injury or death arose out of the employment where the employee is found injured at the place where his duty may have required him to be, or where the employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, as in case of a night watchman found dead at his post, or a miner found dead under the wheels of a mine car. Such presumptions are rebuttable and they disappear on the introduction of evidence to the contrary.''

After having spent some time reading this record, reading and re-reading the briefs, and authorities cited, and making some independent investigation, we have come to the conclusion that under the case as presented by this record the Chancellor was correct and his decree is therefore affirmed.