THE TRAVELERS INSURANCE COMPANY et al.,
Plaintiffs-in-Error,

*v.*

MRS. RUTH EVANS, Defendant-in-Error.

425 S.W.2d 611.

(*Knoxville,* September Term, 1967.)

Opinion filed March 6, 1968.

EDWIN L. TREADWAY, HUNTER, SMITH, DAVIS, NORRIS, WADDEY & TREADWAY, Kingsport, for plaintiffs in error.

E. LYNN MINTER and CARL W. MILLER, Kingsport, for defendant in error.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

This is an appeal from a judgment of the trial judge granting workmen's compensation benefits to Mrs. Ruth Evans for the death of her husband, Arthur E. Evans, due to a heart attack.

Mrs. Evans will be referred to as petitioner, The Travelers Insurance Company and International Printing Pressmen & Assistants' Union of North America will be referred to as defendants.

Defendants insist there is no material evidence in the record to show the death of Evans arose out of or in the course of his employment.

Petitioner insists there is material evidence to support the finding of the trial judge her husband's death due to a heart attack arose out of and in the course of his employment.

The facts are undisputed. The deceased was an employee of the International Printing Pressman & Assistants' Union of North America and was for many years editor and manager of Specialty Workers Magazine.

Approximately one year prior to his death, he had symptoms of a heart condition which continued until his death.

A few weeks prior to his death he had been required to stay in Kingsport, Tennessee, where a strike involving the Union was in progress. In addition to his duties as editor of the magazine, he was required to work night and day attending conferences with respect to problems of the strike. While in Kingsport he worked fourteen to sixteen hours a day five days a week.

On April 4, 1963, deceased went to Nashville to attend a Union convention, which convened at nine A.M., on

April 5, 1963. He was a staff officer of the Union. All officers and delegates to the convention were required to stay at the Andrew Jackson Hotel, where the convention was to be held. Deceased was not required to take his meals at the hotel. He, as well as all the officers and delegates of the Union, were free to have their meals at any restaurant of their choice. The Union paid all expenses of the officers and delegates incurred during the convention.

Anthony DeAndrade, President of the Union, testified he was the direct supervisor of deceased and assigned to him his duties. That it was deceased's duty to address the convention; and to meet with delegates to the convention during the evening after the adjournment of the convention, which was usually at five P.M. That Evans was subject to be called to duty at all hours of the day while attending the convention.

Deceased attended the convention on April 5, 1963, which convened at nine A.M., and adjourned at nine P.M. He was last seen alive at ten P.M., that date in the hotel. The convention was to re-convene at nine A.M., on April 6, 1963.

Deceased died from a heart attack on a street in Nashville on the morning of April 6, 1963, some time prior to eight A.M.

A death certificate filed in the record shows his death was "immediate" and he was fifty-two years of age.

A two-page hypothetical question was read to Dr. William A. Wiley. The question recited the duties of Evans while at Kingsport and at the convention. He was asked if the work he had performed in Kingsport and

Nashville could or might have aggravated his heart condition and hastened his death. He answered it could have.

■ The trial judge found deceased's heart condition was aggravated as a result of his employment due to stress, strain, anxiety and work entailing long hours of work and very little rest; and that the cause of his death arose out of and in the course of his employment.

"[The phrase], 'in the course of,' refers to time and place, and 'arising out of,' to cause or origin; and an injury, by accident to an employee is, 'in the course of' employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment." *Shubert v. Steelman,* 214 Tenn. 102, 377 S.W.2d 940 (1964).

"The injury received must arise 'out of' the employment as well as 'in the course of' employment." *McAdams v. Canale,* 200 Tenn. 655, 294 S.W.2d 696 (1956).

■ It was incumbent upon petitioner to show the death of her husband was occasioned by an accidental injury which has been defined as being an unusual, fortuitous, or unexpected happening, causing an injury which was accidental in character; and that such accident and injury grew out of and in the course of his employment. *Smith v. Tenn. Furn. Ind., Inc.,* 212 Tenn. 291, 369 S.W.2d 721 (1963).

There is no proof deceased was at the time of the fatal heart attack performing any duty which he was employed to do.

Nevertheless, petitioner insists the presumption prevails deceased was performing a duty at the time of his

fatal heart attack because he was subject to call to duty during all hours of the day.

Petitioner relies on the rule stated in *Crane Rental Service v. Rutledge,* 219 Tenn. 433, 410 S.W.2d 418 (1966), as follows:

"A presumption may arise that an accidental injury received by an employee arose out of and in the course of employment, as where the employee is found injured or dead under circumstances indicating that injury or death occurred within the time and space limits of the employment; but such presumption is rebuttable and disappears on the introduction of evidence to the contrary. * * * Generally, the presumption is that an employee was following the usual course of carrying out the employer's business at the time of injury, and there is a natural presumption that one charged with the performance of a duty and injured while executing his superior's orders, is injured in the course of, or as a consequence of, the employment. Likewise, in the absence of evidence to the contrary, the presumption or inference will be indulged in that injury or death arose out of the employment where the employee is found injured at the place where his duty may have required him to be, or where the employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, as in the case of a night watchman found dead at his post, or a miner found dead under wheels of a mine car. Such presumptions are rebuttable and they disappear on the introduction of evidence to the contrary." 100 C.J.S. Workmen's Compensation sec. 513, pages 462, 463, 464 and 465.

. In that case, Rutledge was driving a truck with a trailer on which was a boom to be delivered to a construction site. Rutledge drove the truck and trailer from the premises of his employer for a short distance and across an intersection. He stopped the truck and was walking across the intersection towards his employer's place of business when he was struck by a car.

He had parked his pickup truck on the premises of his employer when he came to work. The proof showed he had certain tools in the truck and his lunch was found therein. It was held, in the absence of any other evidence, it could logically be inferred Rutledge was returning to his truck to get his lunch and tools when he was struck by the car; and that the accident arose out of and in the course of his employment.

In the instant case, there is no proof as to the activities of Evans from ten P.M., the previous night until he suffered the fatal heart attack on a street in Nashville some time during the next morning prior to eight A.M.

. There is no proof he had been assigned to perform a duty for his employer during those hours. There is no evidence any meeting of the delegates or other activity of the convention was held or scheduled during that time. Nor is there any proof he was required at any time to perform a duty which would necessitate the use of the streets.

█ The naked fact he was subject to be called to duty twenty-four hours a day would not raise a presumption his heart attack arose out of and in the course of his employment.

█ Likewise, the fact he was in Nashville because of his employment would not raise such a presumption. The

mere presence of an employee at the place of injury because of employment will not result in the injury being considered as arising out of the employment. *Scott v. Shinn,* 171 Tenn. 478, 105 S.W.2d 103 (1937).

 Furthermore, there is no proof of any circumstance surrounding his death. The only proof is he suffered a fatal heart attack on a street in Nashville. Whether, at the time of his collapse, he was standing, sitting or walking is a matter of conjecture. In other words, whether his collapse was the result of some ememployment activity, or the natural progress of his heart condition is conjectural.

The mere manifestation of a heart condition without any proof of strain or over-exertion at work does not show an accidental injury even though the development of the heart disease may have been hastened by the employee's usual and ordinary work." 99 C.J.S. Workmen's Compensation sec. 177, page 604; *Hagewood v. E. I. DuPont,* 206 Tenn. 239, 332 S.W.2d 660 (1960).

In Larson's, Workmen's Compensation Law, Section 38.83, page 565, it is said:

"There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes an employee while waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its final climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot

support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did happen; it happened by the inexorable march of the disease. It would have been accidental if the employee, by a miscalculation of his own strength, inadvertently hastened his own death by exertion that caused the final breakdown.''

█ The rule that death at the post of labor is presumed to have resulted from the employment may not be relied upon to support a theory of accidental injury which in the light of the evidence is conjectural, 100 C.J.S. Workmen's Compensation sec. 513, pages 465, 466.

█ While this Court is bound by the findings of the trial judge on questions of fact, whenever there is any evidence to sustain the findings, it is not bound by the conclusions drawn by the trial judge from undisputed facts, and may reach a different conclusion from that of the trial court on the same findings of fact. *Wilson v. Van Buren County*, 196 Tenn., 487, 268 S.W.2d 363 (1954).

Having reached the conclusion the trial judge must be reversed and the case dismissed, we deem it unnecessary to consider defendants' other assignments of error.

The judgment of the trial court is reversed and the suit dismissed at the cost of petitioner.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.