Alice Nelson CURRY, Plaintiff-Appellant,

v.

The TRAVELERS INSURANCE
COMPANY and Jensens, Inc.,
Defendants-Appellees.

Supreme Court of Tennessee.

Dec. 3, 1979.

Rehearing Denied Feb. 25, 1980.

Allen Shoffner, Shelbyville, for plaintiff-appellant.

Edward F. Gordon, Bobo, Gordon & Bobo, Shelbyville, for defendants-appellees.

## OPINION

BROCK, Chief Justice.

This is a workmen's compensation case in which the plaintiff, Alice Nelson Curry, appeals from a judgment entered in favor of the defendants, the Travelers Insurance Company and Jensens, Inc. Mrs. Curry is the widow of Buford Curry, a 64-year-old employee of Jensens' who suffered a myocardial infarction at work on January 18, 1978, and died approximately 30 hours later. The plaintiff presents the following two issues in her appeal: (1) Whether the trial court erred in considering and reciting in its memorandum opinion a misquoted statement from medical testimony; and (2) whether the trial court erred in concluding that the plaintiff failed to establish by a preponderance of the evidence that there was a causal connection between Mr. Curry's work and his myocardial infarction.

Prior to Mr. Curry's death he had been employed by Jensens' for about twelve years and had worked on an extrusion press

in the production of graphite pencil leads and cosmetic crayons. His duties included loading lead into a pot-like container under the press and knocking the container back into place with a 10–12 lb. hammer. As the lead was extruded from the press, Mr. Curry's co-worker would place lengths of the material onto a board 12 in. wide and 27 in. long. When the board was full, Mr. Curry would take it to a table and cut the lead into shorter strips. It was then placed into trays and several times a day these trays were carted into another room. The maximum load that Mr. Curry was ever required to move or carry was approximately 50 lbs.

Periodically the press became clogged with foreign matter and had to be "knocked down." This procedure entailed tapping a lever around with the hammer to a point where the container would swing down on hinges. After it was cleaned out, a fellow worker would help Curry lift the container back into place and hammer the lever back around. The press had to be knocked down in this fashion anywhere from once a month to two or three time a week.

On the day of his heart attack Mr. Curry went to work at 6:00 a. m., having worked the 6:00 a. m. to 2:30 p. m. shift for the last ten years. His wife testified that he appeared to feel fine at breakfast that morning. Curry's co-worker testified that shortly after 6:00 a. m. the press became clogged and had to be knocked down. While engaged in this activity, Mr. Curry became hot and flushed and subsequently left his work station. When he returned he admitted that he "felt bad" and "was hurting." He continued to work until 8:00 a. m. at which time he took the regular 15 minute break. Returning from the break, Mr. Curry remained at his station for another twenty to thirty minutes when he left again. He proceeded to the rest area of the plant where he collapsed and was found by a fellow worker. He was carried to the plant office temporarily and then transported to the hospital at approximately 10:00 a. m. Mr. Curry died on the following day, January 19, 1978.

The cause of Mr. Curry's death was established and stipulated to be cardiogenic shock from myocardial infarction. The parties also stipulated that the infarction was suffered within the scope of Curry's employment. The autopsy report revealed that Curry had a 98% occlusion of the right anterior descending coronary artery, caused by gradual atherosclerosis. A thrombosis, or blood clot, had also totally occluded the right coronary artery and thrombic material was found in other non-vital arteries of the body. A good deal of myocardial scar tissue, showing previous minor heart attacks of which Curry may not even have been aware, was also found in the autopsy.

The plaintiff's medical expert, Dr. Feldhaus, is a general practitioner and was the treating physician. In his opinion, Mr. Curry's infarction resulted from the 98% occlusion of the anterior artery which fatally decreased the blood flow to the decedent's heart. Dr. Feldhaus also stated that physical exertion increasing the heart's need for blood "could have" caused the attack but upon cross-examination refused to base this conclusion upon a reasonable degree of medical certainty.

Testimony was offered on behalf of the defendants from three different doctors. The pathologist who performed the autopsy, Dr. Kendall, took the position that the thrombosis in the right coronary artery caused the attack rather than the occlusion of the anterior artery even though he felt that the latter may have been a contributing factor. Dr. Kendall further stated that physical exertion would not precipitate this type of fatal blood clot but that it could precipitate an attack in other cases due to severe atherosclerosis in the anterior descending artery. Dr. Grossman, a cardiologist, examined the autopsy report and hospital records of Mr. Curry and thought that the occlusion of the anterior descending artery was the cause of death. He stated as a general rule, however, that physical exertion did not cause myocardial infarction in a person with coronary heart disease but that most people with the disease died at home in bed or while resting. Dr. Ownby, an internist, testified on the basis of the same

records that "reasonable physical exertion" that one did "from day to day" was rarely the precipitating cause of an infarction and was never the cause of a thrombosis.

Based on the foregoing medical evidence, the trial court stated that Dr. Feldhaus's testimony, when coupled with other lay testimony, might be sufficient for the plaintiff to recover in the absence of any countervailing evidence. However, the trial court held that the plaintiff had failed to meet her burden of proof as to the causal connection between Mr. Curry's work and his heart attack.

I

 In the trial court's memorandum opinion, the statement that Curry's work was "certainly not a causative factor" of his death was attributed to Dr. Grossman. While these exact words do not appear in Dr. Grossman's deposition, he does state that "when a person who is going about his usual activities has [a heart attack], as I was told this man was doing, I rarely if ever would consider that as even any factor whatsoever." Thus, even though the trial court misquoted Dr. Grossman the statement was not an unfair summary of his testimony. Moreover, this minor error does not constitute grounds for reversal.

II

With regard to the issue of whether the trial court erred in concluding that the plaintiff had failed to show causal connection between Mr. Curry's work and his heart attack, we note at the outset that, contrary to the plaintiff's position, this conclusion is entitled to the application of the material evidence rule. The plaintiff has also erroneously asserted that the trial court should have indulged the inference that Curry's heart attack arose out of and in the course of his employment, under the authority of *Crane Rental Service v. Rutledge*, 219 Tenn. 433, 410 S.W.2d 418 (1966). However, that inference is only applicable "when an employee is found at his post of labor during the time that he is usually employed *and there is no direct evidence as*

*to the manner of his death.*" (Emphasis supplied.) 410 S.W.2d at 421. In the case at bar, there is absolutely no question but that Mr. Curry died of a myocardial infarction.

Thus, the proper issue that was before the trial court, as set out in *Shelby Mutual Insurance Company v. Dudley*, 574 S.W.2d 43, 44, Utah (1978), is "whether the heart attack [was] precipitated by the physical activity and exertion of the employee's work." Upon a full consideration of the medical testimony presented in this case, we are of the opinion that there is an obvious conflict between the medical experts on the issue of causation. Under the material evidence rule, this Court is, therefore, bound to accept the finding of the trial judge on the issue. *Shelby Mutual Insurance Company v. Dudley, supra*, at 45.

The judgment of the trial court is affirmed and the costs of this appeal are adjudged against the plaintiff.

COOPER, HENRY, HARBISON, JJ., and DAUGHTREY, Special Judge, concur.