IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2010 Session

## ROY G. BUTLER v. DAVID A. STILL

**Appeal from the Chancery Court for Rutherford County**
**No. 07-1577CV     Robert E. Corlew III, Chancellor**

**No. M2009-01729-COA-R3-CV - Filed August 24, 2010**

This is a dispute to quiet title to 5 acres between the owners of adjacent tracts. Both parties claim ownership of the disputed property along their common boundary by color of title. At issue is whether the plaintiff satisfied the requirements of Tennessee Code Annotated § 28-2-105 for quieting title to lands under color of title by establishing the deed had been recorded for at least 30 years and the property at issue had been adversely possessed by the plaintiff or his predecessors in title for at least 7 years. The trial court ruled in favor of the plaintiff finding that the plaintiff and his predecessors had adversely possessed the disputed property for more than 7 years and that the plaintiff's claim derived from a metes and bounds description in a 1961 deed, which was of record for more than 30 years. Finding the evidence preponderates in favor of the trial court's ruling, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Steven J. Meisner, Nashville, Tennessee, for the appellant, David A. Still.

C. Dewees Berry, IV and C. David Killion, Nashville, Tennessee, for the appellee, Roy G. Butler.

### OPINION

Roy Butler ("Plaintiff") and David Still ("Defendant") each claim ownership to 5 acres that are along the parties' common boundary line. Plaintiff's claim to the 5 acres at issue is a color of title claim based on a metes and bounds description in a 1961 deed of record and 7 years of adverse possession. Defendant's claim is based on a general boundary

description that appears in a 1958 deed of record. The 5 acres at issue are located within legal descriptions in both deeds.

The 5 acres in dispute were part of a 25-acre tract owned by W.R. Haynes until 1958. Haynes partitioned the 25-acre tract into two tracts, a 12-acre tract and a 13-acre tract, so that he could convey the tracts to separate buyers by separate deeds. Haynes sold the 13-acre tract to Ernest Still, the predecessor in title to Defendant, and sold the 12-acre tract to Frank Griffin, a predecessor in title to Plaintiff. Each of the 1958 deeds provided a legal description of the property that is known as a general boundary description.

The matters in dispute arise from when Griffin sold his property in 1961. Griffin conveyed the property pursuant to a warranty deed containing a different legal description, a metes and bounds description based on a survey that erroneously included the 5-acres in dispute. The property claimed by Plaintiff derives from the metes and bounds description in the 1961 deed that includes the 5 acres in dispute. The disputed property is also within the general boundary description of the tract owned by Defendant.

The general boundary description in the 1958 deed to Ernest Still, Defendant's father and predecessor in title, reads as follows:

> Being thirteen (13) acres from the West portion of W.R. Haynes' tract along State of Tennessee Highway No. 96, and described particularly as being with the Charles King tract which lies to the West of said tract herein conveyed, and thence eastward for 245 feet along said Highway No. 96 conveying an area including the land from said Highway No. 96 to a creek lying to the North of the land herein conveyed. Said land is bound generally as follows:
> On the North by creek;
> On the East by Frank Griffin;
> On the South by Tennessee Highway No. 96; and
> On the West by Charles King and Spann lands.

The 13 acre-tract acquired by Ernest Still did not change hands until 2007, when he conveyed the property by quitclaim deed to Defendant, his son David Still. The 2007 quitclaim deed to Defendant contains the same general boundary description as the 1958 deed to his father.

The general boundary description in the 1958 deed to Griffin – one of Plaintiff's predecessors in title – reads as follows:

Being twelve (12) acres, more or less, from the East portion of the W. R. Haynes tract along U.S. Highway #96 and being the East half of said property less one (1) acre formerly deeded by W. R. Haynes to Howard Thomas Ethridge. Said tract is located and situated north of U.S. Highway # 96 and is bound generally as follows, to wit:

On the North by creek;

On the West by W.R. Haynes;

On the South by Ethridge for 210 feet and Highway #96 for 105 feet.

Unlike the 13-acre tract conveyed to Still, the 12-acre tract conveyed to Griffin changed hands several times since 1958. To further complicate matters, the Griffin tract was combined with adjoining property to create a 25-acre tract, but not the same 25-acre tract owned by Haynes in 1958.

Griffin sold the 12-acre tract to John Bush, Sr. in 1961. As noted above, the most significant aspect of this conveyance is that the deed contained a new legal description, one based on a survey done by Stephen Draper. The new metes and bounds description reads in pertinent part:

BEGINNING at a point in the center of Highway #96, the SW corner of the Howard Etheridge property then with a line between this tract herein conveyed and Etheridge property, N. 40 deg. E. 207.5 ft. to a point, thence N. 85 deg. 20' E. 210 ft. to the Dave Raskin [sic] property; thence N. 4 deg. E. 2000 ft. more or less with a fence to pile of rocks; thence West 210 feet more or less, to a point; thence S. 4 deg. W. 2, 218 ft., more or less with old fence to a point in center of said Highway; thence with the center of said Highway N. 85 deg. 20' E. 315 ft., more or less, to the point of beginning and containing 25 acres, more or less.[1]

In 1989, Plaintiff acquired the new 25-acre tract, which included the 12-acre tract deeded by Haynes in 1958. The description in the 1989 deed reads as follows:

Beginning at a pin on the north margin of State Route #96, this being the SW corner of this tract, the SE corner of Ernest M. Still and further identified as

---

[1]Although a portion of the new 25-acre tract was owned by Haynes in 1958, this is not the same 25-acre tract. Moreover, the new 25-acre tract was sold by Bush to Willie E. Siegrist in 1968. Siegrist subsequently sold 2.5 acres of that tract to Loren E. Cox, and Cox sold the 2.5-acre tract to John T. Whayne. A house was constructed on the 2.5-acre tract, but that property is not in conflict. In 1985, Whayne purchased what remained of the Siegrist property and sold the entire tract to Plaintiff in 1989.

N-89°42'28"-E, 110.0 feet from the SE corner of Eva J. Richardson (Deed Book 233, page 584); thence with the north margin of State Rt. #965, N-89°42'28"-E, 307.06 feet to a mark on rock, being the SW corner of Ernest M. Still (Deed Book 133, page 301); thence with west line of Still N-8°27'37"-E, 177.5 feet to a pin; thence with north line of Still N-89°47'37"-E, 210.0 feet to a pin in west fence of Bessie Mai Baskin; thence with west fence of Baskin N-8°27'37"-E, 214.7 feet to a pin in pile of rock, being the SE corner of property of John T. Whayne (Deed Book 311, page 273), thence with east fence of Whayne, being west fence of Baskin N-10°267'39"-E, 228.5 feet to a pin in fence line, being the NE corner of John T. Whayne; thence continuing with west fence of Baskin N-8°47'10"-E, through an 18 inch cedar (hacked) in fence line 53.4 feet off corner pin, for a total distance of 1565.0 feet to corner pin, being an elbow corner of Baskin; thence with South line of Baskin along with the center of a creek N-86°38'-W, 107.03 feet to a point; thence continuing N-82°59'-W, 399.65 feet to a point in center of creek; thence leaving creek and with east line of Still (Deed Book 124, page 105) S-9°00'36"-W, through a pin 21.0 feet off center line of creek and continuing for a total distance of 2,244.66 feet to the beginning, containing 25.00 acres more or less. Included in this tract is a tract previously deeded to John T. Whayne (Deed Book 311, page 273) containing 2.50 acres. Excluding the Whayne tract leaves a net acreage of 22.50 acres for this conveyance.

Being the same property conveyed to John T. Whayne & wife, Shirley Jean Whayne by warranty deed from Loren Elize Cox as of record in Deed Book 311, page 273, Register's Office of Rutherford County, Tennessee and by Warranty Deed from Willie E. Siegrist and Wife Peggy Siegrist as of record in Deed Book 343, page 273, Register's Office of Rutherford County, Tennessee.

A two-day trial was held on July 13 and 14, 2009, and several witnesses testified on behalf of the parties. Two of the witnesses were surveyors. Robert E. Francis, Plaintiff's surveyor, testified regarding the accuracy of his survey and that of Mr. Draper's 1961 survey. Francis opined that both surveys comport with the deed description contained in the 1961 deed to Bush. Francis testified that when he did a survey in 1985 of Plaintiff's original 12-acre tract and additional property Plaintiff acquired, he did not consider the legal description in Defendant's deed. Christopher Blake Sexton, Defendant's surveyor, testified that he used natural and artificial monuments to locate Defendant's property, and he testified that there were no improvements to the disputed portion of property and no evidence of adverse possession. Defendant and his father Ernest Still both testified. In pertinent part they admitted

that they made no improvements to the 5 acres in dispute nor did they maintain their 13-acre tract.

The trial court found that Defendant and his predecessor did not assert dominion over the 5 acres until after the lawsuit was filed. Conversely, the court found that Plaintiff and his predecessors in title lived on and actively used the property, including the 5 acres. The trial court also found that Plaintiff and his predecessors used the property with regularity. Specifically, that he graded and graveled the driveway, installed a culvert, installed and maintained a chained gate, installed and used a house trailer on the property, constructed and used a garage/storage shed, applied for and maintained "greenbelt" tax status for the disputed portion of property, and maintained the property.

In its memorandum opinion, the trial court found that Plaintiff's color of title claim to the disputed property derived from a metes and bounds description in a 1961 deed, which was of record for more than thirty years prior to the filing of this action. It also found clear and convincing evidence that Plaintiff and his predecessors in title adversely possessed the disputed property for more than 7 years. Based on these findings the trial court determined that Plaintiff satisfied the requirements of Tenn. Code Ann. § 28-2-105 and ruled in favor of Plaintiff. This appeal by Defendant followed.

### STANDARD OF REVIEW

The appellate court conducts a *de novo* review of the trial court's decision in a boundary dispute with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Mixed questions of law and fact are subject to a different standard of review. *Bubis v. Blackman*, 435 S.W.2d 492, 498 (Tenn. Ct. App. 1968).

A presumption of correctness does not attach to mixed questions of fact and law. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (citing *Murdock Acceptance Corp. v. Jones*, 362 S.W.2d 266, 268 (Tenn. Ct. App. 1961)). Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination as to the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. *Travelers Insurance Co. v. Evans*, 425 S.W.2d 611, 616 (Tenn. 1968); *Sullivan v. Green*, 331 S.W.2d 686, 692-93 (Tenn. 1959). Our standard of review of rulings on mixed questions of fact and law is *de novo* with a presumption of correctness extended only to the trial court's findings of fact. *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292,305 (Tenn. 2005) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

## ANALYSIS

Tennessee Code Annotated § 28-2-105 provides a mechanism for quieting title to real property if the claim is based on a conveyance or assurance of title of record for at least 30 years and if the property has been adversely possessed by the claimant or his predecessors in title for at least 7 years. *See* Tenn. Code § 28-2-105. The statute reads as follows:

> Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom such person claims having been in adverse possession of same for seven (7) years, where the real estate is held and claimed by such person or those through whom such person claims by a conveyance, devise, grant, a decree of court order, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein.

Tenn. Code Ann. § 28-2-105. If the claimant can establish both of these essential elements, the statute "has the effect of vesting absolutely the legal title to the land in the person holding adverse possession thereof during the period of limitation fixed by the statute (seven years) and under assurance of title registered for a period of thirty years." *Savely v. Bridges*, 418 S.W.2d 472, 478 (Tenn. Ct. App. 1967).

We will first examine whether Plaintiff established a claim to the 5 acres in dispute based on a conveyance of record in the register's office of Rutherford County for a period of at least 30 years, commonly referred to as color of title.[2]

COLOR OF TITLE FOR THIRTY YEARS

John Bush Sr. is one of plaintiff's numerous predecessors in title and, in pertinent part, the trial court held in its Memorandum Opinion that:

> [T]here can be no contest that the deed from Green to Bush was recorded on September 21, 1961, nor can there be any contention that the period of time between the recording of that deed and the time of the filing of the suit herein on October 9, 2007 was well in excess of the required thirty years. There has been no evidence that the description contained within that deed is not the land which is in contention before the Court here. Therefore, the Court finds that the description conveying the land to the Plaintiff's predecessors in title has been on file for more than thirty years and that it provides a specific description contemplated by the provisions of TENNESSEE CODE ANNOTATED §28-2-105.

Surveyor Robert E. Francis, who had been on the property four times between 1977 and 1989, testified that he did a boundary survey on the entire tract owned by Plaintiff's immediate predecessor in title in 1985 and that his survey was reasonably close to the survey done by Stephen Draper in 1961. The Draper survey was the basis of the 1961 metes and bounds deed from Green to Bush. Further, Francis testified that only minor discrepancies existed between his survey and that of Mr. Draper, and he attributed it to technological advances in surveying equipment. Defendant's surveyor, Christopher Sexton, testified on cross-examination that he could not dispute the fact that a continuous closed-perimeter 25-acre survey tract had been on file in the office of Register of Deeds since 1961.

The foregoing notwithstanding, Defendant contends he should prevail because the Sexton survey is the more accurate and reliable depiction of the boundary between the subject properties. He makes this contention on the fact the Sexton survey accounted for the adjacent properties and natural monuments and that Defendant has "superior title" to the area in conflict because his deed is consistent with the original division of the property in 1958.

---

[2] Color of title has been described as "something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used." *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 376 n. 3 (Tenn. 2007) (quoting 10 Thompson on Real Property § 87.12, at 145).

The argument asserted by Defendant would be compelling if this were a classic boundary line dispute because "the court must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999) (citations omitted). However, this is not a classic boundary line dispute; this is an action to quiet title based on adverse possession by color of title, which is subject to a different set of rules set forth in Tenn. Code Ann. § 28-2-105, not *Mix v. Miller*.

In this case, both surveyors testified that the disputed property is part of the property described in Plaintiff's metes and bounds deed which has been of record since 1961. We, therefore, agree with the trial court's determination that Plaintiff satisfied the 30-year color of title requirement. We now turn our attention to the issue of adverse possession.

<u>ADVERSE POSSESSION</u>

To be vested with an absolute and indefeasible title to the disputed 5-acre tract, Plaintiff must establish, in addition to having established color of title for at least 30 years, that he and/or his predecessors in title have adversely possessed the disputed property for at least 7 continuous years. *See* Tenn. Code Ann. § 28-2-105 (2010). Plaintiff must demonstrate the requisite elements of adverse possession by clear and convincing evidence. *Wilson v. Price,* 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005) (citing *O'Brien v. Waggoner*, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936) (holding that the party claiming ownership by adverse possession must demonstrate the requisite elements by clear and convincing evidence)).

"Adverse possession is the possession of real property of another which is inconsistent with the rights of the true owner." *Wilson,* 195 S.W.3d at 666. "To establish adverse possession under the common law or a statutory claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." *Id.* (citing *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983); cf. *Menefee v. Davidson County*, 260 S.W.2d 283, 285 (Tenn. 1953)). The requisite period of time in this case is 7 years. Tenn. Code Ann. § 28-2-105.

The possession must be open such that it provides notice to the world that the adverse possessor claims ownership of that property. *Wilson,* 195 S.W.3d at 667 (citing *Cooke v. Smith*, 721 S.W.2d 251, 254 (Tenn. Ct. App. 198)). Fencing is not required to demonstrate possession. *Id.* (citing *Bensdorff v. Uihlein*, 177 S.W. 481, 482 (Tenn. 1915)). "Rather, the possessor must use the property in a manner consistent with its nature and purpose and in such a way as to give notice to the rightful owner that another is asserting dominion over his property." *Id.* (citing *Bensdorff* , 177 S.W. at 483).

The trial court determined that Plaintiff adversely possessed the land for a period greater than seven years. In its Memorandum Opinion, the trial court held that based on the analysis of the facts, it was clear that Defendant and his father did very little to assert any dominion over the land. At trial, Defendant and his father testified that they did not set foot on the property from 1983 until 2006. Ernest Still testified that he discussed the issue of whether Plaintiff's predecessor in title, Siegrist, placed a house trailer on his property, and Defendant testified this conversation occurred in the late 1960s to early 1970s. Ernest Still further testified that he spoke to officials in the property assessor's office to assert his ownership of the property, which was also being taxed to Plaintiff's predecessors in title.[3] However, no action was taken by Ernest Still or his son until several decades later when they filed this suit. Defendant acknowledged at trial that prior to filing this suit, he took no action to claim possession of the disputed property. Also, no evidence was presented to indicate that any other members of the Still family did anything to assert rights of ownership to the property.

The trial court made several findings of fact to support its conclusion that Plaintiff and his predecessors in title did a number of things to assert dominion over the disputed property, and we have determined the evidence in the record does not preponderate against the trial court's findings of fact.

Willie E. Siegrist, Plaintiff's predecessor in title owned the property from 1969 until 1985 and placed a house trailer on the property. James Spann, who has lived across the street from the property for more than 40 years, testified that somebody in the Siegrist family lived in the house trailer for a period of years while a home was being built on a portion of the property not in dispute. The evidence reveals that the house trailer, along with a storage building, although dilapidated, are still on the disputed property. Furthermore, Siegrist constructed a culvert and built a driveway on the disputed property. Plaintiff and his predecessors in title have all used the driveway to get to the house on the adjoining property.[4]

John T. Whayne is Plaintiff's immediate predecessor in title. When Whayne acquired the property from Siegrist in 1985, he added fencing, kept horses on the property, and mowed the area on either side of the driveway. A wellhouse and septic tank were also placed on the property. Prior to Plaintiff purchasing the property, a "For Sale" sign was placed on the property, and it remained there for several months.

---

[3]The trial court held and we have found support in the record that "[i]t is undisputed that each of the parties and their predecessors in title paid property taxes on as much property as the county would assess to them."

[4]The house is located on a portion of the property, which is wholly outside the area in conflict.

When Plaintiff acquired the property in 1989, he added a waterline that went along the road up to the house. Plaintiff also regularly used, graded, and re-graveled the driveway. He installed and maintained a gate on the disputed portion of property. Plaintiff sold a small portion of disputed property to the State of Tennessee when State Route 840 was constructed, as did Defendant's predecessor in title; however, Defendant's predecessor made no claim to compensation for land bought within the contested area. Furthermore, there is evidence in the record that Plaintiff and his predecessors were the only ones to maintain the disputed property in the past two or three decades. In particular, Plaintiff has mowed and planted pine trees and irises on the disputed property. In addition, Plaintiff applied for and was granted a reduced tax rate through the "greenbelt" provisions for his payment of taxes on the disputed property.

The foregoing notwithstanding, Defendant contends the trial court failed to consider evidence that Plaintiff's predecessors in title abandoned the property and, therefore, Plaintiff failed to show by clear and convincing evidence that he "continuously" possessed the area in conflict given that his predecessors in title abandoned the property. *See Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 375-76 (Tenn. 2007). A property owner abandons land if he or she voluntarily relinquishes the property "with the intention of terminating [his or her] ownership, possession and control and without vesting ownership in any other person." *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 278-79 (Tenn. 2005) (citing *Hays v. Montague*, 860 S.W.2d 403, 408 (Tenn. Ct. App. 1993)). Under Tennessee common law, two elements must be satisfied in order to prove abandonment: (1) the intent to abandon; and (2) some external act by which the intent to abandon is effectuated. *Cottrell v. Daniel*, 205 S.W.2d 973, 976 (Tenn. Ct. App. 1947). Specifically, Defendant contends that Plaintiff's predecessor in title, Siegrist, abandoned the house trailer and storage shed, disconnected the utilities, and stopped using the septic tank years before Plaintiff took possession of the property, which showed an intent to abandon. Although Siegrist stopped using the house trailer and storage shed, he continued to openly and notoriously possess the property in other ways; thus, as the trial court did, we find the foregoing evidence is insufficient to establish by the requisite proof that Plaintiff or Siegrist showed any intent to abandon the property at issue.

In order to establish the requisite period of adverse possession, "a claimant can rely on his own adverse use as well as the adverse use of his predecessors in title." *See Derryberry v. Ledford*, 506 S.W.2d 152, 156 (Tenn. Ct. App. 1973) (holding that plaintiff could tack his possession to that of his predecessor in title for the purpose of acquiring title by twenty years adverse possession.) This is known as "tacking." *See id*. In this case, both Siegrist and Whayne enclosed the contested area with some sort of fencing material. In particular, Whayne kept horses on the disputed portion of property and used a barbed wire fence with metal posts to contain the horses. Although the fencing was removed and all that

remains is metal posts, the use by Plaintiff's predecessors in title is still relevant and offers support for their use of the property, which can be tacked to Plaintiff's use of the property. Moreover, Plaintiff made numerous improvements to the property and maintained the property in a fashion that was open and obvious since purchasing the property from Bush in 1989. Accordingly, Plaintiff established by clear and convincing evidence that he and his predecessors in title have been in adverse possession of the disputed property for more than the requisite 7 years.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Appellant David A. Still.

_____
FRANK G. CLEMENT, JR., JUDGE