**Marjorie Inez KING, Surviving Widow
of Billy J. King, Deceased,
Plaintiff/Appellee,**

v.

**JONES TRUCK LINES,
Defendant/Appellant.**

Supreme Court of Tennessee,
at Jackson.

April 22, 1991.

Erich W. James, Memphis, for defendant-appellant.

Monroe W. Gibbs, Memphis, for plaintiff-appellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation action, the trial court awarded death benefits to the employee's widow. The trial court found that the employee had suffered an injury to his spleen which arose out of and was in the course of employment, and which resulted in his death. We disagree that the death arose out of employment, because we find that the spleenic injury was caused by cardiopulmonary resuscitation following a heart attack which was not caused by employment. Therefore, we reverse.

### FACTUAL HISTORY

Billy J. King ("King") was six feet, two and one-half inches tall, weighed 209 pounds, and was 53 years old at the time of his death on July 9, 1987. He had been employed as an over-the-road truck driver with the defendant employer, Jones Truck Lines, since May 1985.

At the age of 20, King had contracted rheumatic fever, which led to the replacement of his mitral heart valve with an artificial valve. When King moved to Memphis from St. Louis in 1981, he was referred by his St. Louis cardiologist to a fellow cardiologist, Dr. Thomas Stern, who treated him and in 1984 arranged for the replacement of King's aortic heart valve with a second artificial valve. As a part of his treatment, King was taking Coumadin, a blood thinner, and Lanoxin to control his heart rhythm. In addition, King was a borderline diabetic who took Diabinese to control his blood sugar. King saw Dr. Stern for his last regular six-month checkup in February of 1987, at which time Dr. Stern reported he had been quite stable for some time, had the same irregular heartbeat he had had for years but it was well controlled. Dr. Stern found no sign of heart weakness, no abnormalities in the x-rays or electrocardiogram, and no evidence of strain on the heart. His instructions to King were the same as in the past—to lead a normal life, to continue his truck driving occupation, to avoid extraordinary stress, and to report if he became short of breath or developed swelling.

King arrived home in Memphis at approximately 1:00 a.m. on Sunday morning, June 28, 1987, after a roundtrip for his employer to Lake Charles, Louisiana. His wife said that King seemed more tired than normal. He awoke at about eight o'clock Sunday morning, and they went to church. Afterward, they went out to eat in a Chinese restaurant, where King enjoyed a meal of cashew chicken and rice.

Following lunch, the Kings returned home and King took a nap at about 5:00 p.m. When Mrs. King returned at about 6:30 p.m., after visiting neighbors, King was already up. King told her he had suffered a severe stomach pain and had taken a Gas–X, which relieved his pain. He also indicated he was sore on the left side of his abdomen. King felt well enough, however, to leave home at about 7:00 p.m. for what was to be his last business trip.

Sometime after midnight on Monday, June 29, 1987, King entered a Shell station mini-mart at Natural Bridge, Alabama, which is approximately 200 miles from Memphis. He was sweating, looked pale, and was bent over in a stooped condition. He leaned over the counter and asked the night manager, Ruby Mae Sutherland, the location of the nearest hospital. She advised him that it was about 11 miles away, and asked if he wanted her to call an ambulance. He asked if he could sit down and she showed him to a booth, after which she obtained towels from the bathroom for King to wipe his face.

King advised her that he had eaten Chinese food and thought he might have food poisoning. It appeared to her that King was having a heart attack. There was nothing to indicate to Sutherland that King or his truck might have been in an accident.

King sat in the booth for twenty to thirty minutes and then approached Sutherland at the register and asked her to call an ambulance. At that time he appeared much more pale and was perspiring heavily. When the ambulance arrived, he was immediately placed on a stretcher, given oxygen, and taken to the Burdick–West Memorial Hospital in Halleyville, Alabama.

The Burdick–West Memorial Hospital record reveals that King arrived by ambulance in the emergency room at 12:53 a.m. on Monday, June 29, 1987, at which time he was pale but alert, with a complaint of severe lower abdominal cramps. He had atrial fibrillation (weak, irregular heartbeats) with a rate of 84, temperature of 93.6, and blood pressure of 98/50. King told hospital personnel his past medical history, his present medications, and his own theory—that he was suffering from food poisoning—but did not report any accidents or physical trauma. His admitting diagnosis was atrial fibrillation and hypertension. His heart fibrillation did not respond to medication.

At approximately 10:00 a.m. Monday morning, King lost consciousness, had very shallow respiration and increasing atrial fibrillation. His blood pressure dropped to 54/40. He suffered respiratory arrest and was intubated. Cardiopulmonary resuscitation by external massage was applied three times. By 10:37 a.m. his blood pressure was restored enough that he could be transported by air ambulance to Baptist Memorial Hospital in Memphis. That evening, Dr. Charles Frankum performed exploratory surgery and surgically removed King's spleen, which had a large laceration three and one-half inches wide by five inches long and was approximately five times its normal size. King never recovered and died in Baptist Memorial Hospital ten days later on July 9, 1987.

A death summary prepared by King's cardiologist, Dr. Thomas Stern, reported that spleenic rupture, shock, intervascular coagulation, rheumatic heart disease, acute tubular necrosis secondary to ischemia, and acute stress gastric ulcer all contributed to King's death.

## TRIAL COURT FINDING

After denial of the claim by the employer, this action for worker's compensation death benefits was filed by King's widow in Shelby County Circuit Court, and was tried on November 3, 1989, after which the trial court found:

2. That the decedent's injury and subsequent death arose out of and within the course and scope of his employment and is therefore compensable under the Tennessee Workers Compensation Act.

3. While the evidence does not clearly establish the precise instrumentality that caused the injury, it does clearly establish that the decedent died as a result of a ruptured spl[een] and notwithstanding the testimony of Dr. Randolph Turner, the Court finds that the testimony of Dr. Stern is much more credible that this ruptured spl[een] could not have resulted without some form of trauma to the decedent.

4. While the issue here may be close, the Court believes that the evidence clearly establishes that the decedent while he complained of an upset stomach before he left Memphis had been driving this truck for many hours and when he arrived at the truck stop in Halleyville, Alabama, some form of injury had occurred to him which was subsequently diagnosed to be a lacerated spl[een] and resulted in his death.

## SCOPE OF REVIEW

■ Our review of findings of fact by the trial court is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn.1989). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987). Under the material evidence rule, this Court was required to accept the findings of fact of trial courts if those findings were supported by any material evidence. *Anderson v. Dean Truck Line, Inc.*, 682 S.W.2d 900, 901–02 (Tenn.1984). However, we are no longer bound by the findings of the trial court in these cases and now determine where the preponderance of the evidence lies. *Cor-*

*coran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988).

## PREPONDERANCE OF THE EVIDENCE

■ The plaintiff in a worker's compensation suit has the burden of proving every element of the case by a preponderance of the evidence. *Talley v. Virginia Insurance Reciprocal*, 775 S.W.2d 587 (Tenn. 1989). Compensable injuries are those caused "by accident arising out of and in the course of employment." Tenn.Code Ann. § 50–6–102(a)(4).

> The phrase "in the course of" refers to time and place, and "arising out of" to cause or origin; an injury by accident to an employee is "in the course of" employment if it occurred while he was performing a duty he was employed to do; and it is an injury "arising out of" employment if caused by a hazard incident to such employment.

*Bell v. Kelso Oil Co.*, 597 S.W.2d 731, 734 (Tenn.1980); *Travelers Insurance Co. v. Googe*, 217 Tenn. 272, 397 S.W.2d 368, 371 (1965).

■ If we find that King suffered an accidental injury to his spleen while on the job, there is no real question that his death "arose out of" employment. Therefore, the question presented by the defendant can be restated—whether the trial court correctly found that the preponderance of evidence demonstrates that King suffered an accidental injury to his spleen "in the course of" employment.

The plaintiff advances two theories in support of the trial court's findings. First, it is argued that King may have sustained a jarring blow on June 27, 1987, when he "hooked up" a trailer in preparation for a trip. The second alleged incident might have occurred on June 28, 1987, after King left Memphis in his tractor-trailer rig en route to Natural Bridge, Alabama, where he arrived in shock and terminally ill.

We first look at the record to determine whether an injury or trauma to the spleen was suffered by King either on Saturday, June 27th, or Sunday, June 28th.

The plaintiff argues that "the driver's daily logbook reveals that the employee *could* have been involved in either hooking tandem trailers or correcting them if they were improperly hooked on June 27, 1987." (Emphasis added.) King reported no such injury to his employer on his return from Lake Charles before leaving for home early Sunday morning. Moreover, King's logbook and the testimony of Mr. Tony Antone, a supervisor at Jones Truck Lines, indicate that the trailer was already attached to King's cab by other employees on or before June 27th. We find no evidence that King suffered an injury in the course of employment on Saturday, June 27, 1987.

Similarly, we find no material evidence in the record to indicate that King suffered an injury to his spleen in the course of his employment on Sunday, June 28, 1987. Dr. Stern testified that "I think that a heavy bump itself if the spleen's condition were [diseased] could cause rupture." No evidence of such a trauma was presented. King reported no such injury to the cashier at the Shell station, to the ambulance attendants, or to the hospital emergency room staff.

While we conclude that the plaintiff failed to prove an accidental injury to King's spleen, this does not end our inquiry. We examine the medical proof to determine the cause of the spleen injury and its contribution to King's death.

## CAUSATION

Two physicians testified about the cause of King's symptoms and ruptured spleen. The defendant's expert was Dr. Turner, a board certified general surgeon. When asked what could have caused King's spleen to rupture, he described the external cardiac massage procedure which had been administered in the Burdick–West Memorial Hospital emergency room:

> This can be a very, a very energetic exercise in which quite significant forces are applied to many of the internal organs. Ribs are frequently fractured. The chest bone is frequently fractured and, on occasion, internal organs may

suffer damage or even rupture as a result of the cardiac massage.

Dr. Turner further testified that, in his opinion, King's abdominal pain was from his heart:

> In a man that had had two heart valves replaced and who had an enlarged heart and who was on Coumadin and who was a diabetic and who was overweight, I would strongly suspect that his symptoms were from his heart.

The plaintiff's expert, Dr. Stern, a clinical professor of cardiology at the University of Tennessee and King's treating cardiologist, testified that the ruptured spleen, which contributed to King's death, was caused by trauma. Dr. Stern was not asked to give his opinion of the cause of King's early symptoms. Dr. Stern's conclusion that "Mr. King appeared to be doing well when he left Memphis and was dying when he got to the hospital in Halleyville," is not inconsistent, however, with Dr. Turner's opinion, that the symptoms which caused King's initial hospitalization were caused by his heart condition. Dr. Stern was not asked whether cardiopulmonary resuscitation could have caused the ruptured spleen, but his testimony is not inconsistent with such a theory.

We find that the preponderance of the evidence shows the painful symptoms which led King to be transported to the hospital emergency room were caused by his heart condition; and the ruptured spleen which contributed to his death was caused by the external cardiac massage resuscitation administered to save his life.

We also find the preponderance of evidence indicates that King suffered from a serious, pre-existing heart condition, but that when he left Memphis on the evening of June 28, 1987, he had no readily recognizable heart symptoms. The employer's own medical expert, Dr. Turner, testified that in his opinion the symptoms King experienced in his truck later that evening were caused by his heart condition, and Dr. Stern testified it was a sudden onset and that something happened on the trip to trigger it. It is undisputed that King displayed symptoms of his heart condition and

was resuscitated at the emergency room immediately after driving 200 miles. Therefore, we conclude that King's heart condition was aggravated during the time of and at the place of, i.e. in the course of, his employment.

Consequently, we must consider a second question which the trial court, because its holding pretermitted the issue, failed to address: whether King's heart condition, which necessitated his resuscitation, was aggravated by events arising out of, and in the course of, employment.

## CAUSATION OF HEART ATTACKS

Determining "[w]hether [deaths result] from natural causes, or a cause 'arising out of' the employment, [has] vexed the courts in every state with a problem that is difficult of solution." *Cunningham v. Hembree*, 195 Tenn. 107, 257 S.W.2d 12, 14 (1953). In struggling with this problem over the years, we have repeatedly pointed out that

> there is no iron-clad rule which calls for payment of benefits under the Workmen's Compensation Law where an employee suffers a heart attack while at work and for the denial of benefits where the employee suffers a heart attack while on the way home from work. The key to the recovery or denial of benefits is whether the heart attack is precipitated by the physical activity and exertion of the employee's work.

*Kingsport Press, Inc. v. Van Huss*, 547 S.W.2d 572, 573 (Tenn.1977); *Lawrence County Highway Department v. Hardiman*, 531 S.W.2d 792 (Tenn.1975). It is well established that "an employer takes the employee as he finds him, that is, with his defects and pre-existing afflictions." *Coleman v. Coker*, 204 Tenn. 310, 321 S.W.2d 540, 541 (1959). In *Swift & Co. v. Howard*, 186 Tenn. 584, 212 S.W.2d 388 (1948), we said:

> When an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If the injury is the prox-

imate cause of disability, i.e., excites and aggravates a previous weakened condition then the employer is liable.

*Id.* 212 S.W.2d at 391. Moreover,

> [i]t is a settled rule of decision in this jurisdiction that an employee's death or disability *which results from a heart attack that is causally related to his employment* is compensable under the worker's compensation act as arising out of and in the course of his employment, although prior to the attack, he suffered from ... heart disease and although the attack was produced by only ordinary exertion and usual strain of the employee's work.

*Flowers v. South Central Bell Telephone Co.*, 672 S.W.2d 769, 770 (Tenn.1984) (citations omitted) (emphasis added).

On the other hand, we have held that "... where the heart attack is not brought on by the work which the employee was doing, or by some external happening in the course of the employment, the employee's death is not covered by the Workmen's Compensation Act." *Shelby Mutual Insurance Co. v. Dudley*, 574 S.W.2d 43, 44 (Tenn.1978). And compensation will not be awarded where the cause of death is a matter of speculation or conjecture. *Travelers Insurance Co. v. Evans*, 221 Tenn. 199, 425 S.W.2d 611, 616 (1968); *Tibbals Floor Covering v. Stanfill*, 219 Tenn. 498, 410 S.W.2d 892 (1967).

In discussing the causal relationship between employment and heart attacks, we emphasized in *Coleman v. Coker*, 204 Tenn. 310, 321 S.W.2d 540 (1959), that:

> [We are] committed to the proposition of law that an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced *by ordinary exertion and usual strain of the work.*
>
> [I]f the physical activity and exertion of an employee's work aggravates a pre-existing heart condition, precipitates the fatal heart attack, and thus hastens his death, such death is the result of accident arising out of and in the course of

the employment within the meaning of our Workmen's Compensation Law.

*Id.* 321 S.W.2d at 541 (emphasis added).

In *Nashville Pure Milk Co. v. Rychen,* 204 Tenn. 575, 322 S.W.2d 432 (1958), this Court said:

> Counsel for appellant seems to have pitched his case on the idea that there must have been some unusual occurrence or activity or exertion beyond the scope of the deceased's ordinary employment activities in order for the death to be compensable. We think this is a misapprehension of our cases. The question is succinctly stated in *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 478, 260 S.W.2d 182, 184, as follows:
>
>> "If an ordinary exertion or usual strain produces an unusual result, is the resulting injury by accident?"
>
> The answer immediately follows:
>
>> "It is now well established that *ordinary and usual exertion at work resulting in injuries, is compensable.*"

*Nashville Pure Milk,* 322 S.W.2d at 434 (emphasis added); *see also Forest Products v. Parvin,* 532 S.W.2d 908, 909 (Tenn. 1975).

In earlier workers compensation cases, we have recognized a presumption, or an inference, that

> "where an employee is found dead at his post of labor, without direct evidence as to the manner of his death, an inference may arise of an accident springing out of and in the course of his employment." *Home Ice Co. v. Franzini,* 161 Tenn. 395, 32 S.W.2d 1032, 1033. In other words a *prima-facie* case for the claimant is thus supported. When such a *prima-facie* case is thus made out the burden shifts to the employer to produce evidence to overthrow such a *prima-facie* case. *Shockley v. Morristown Produce & Ice Co.,* 158 Tenn. 148, 11 S.W.2d 900.

*Milstead v. Kaylor,* 186 Tenn. 642, 212 S.W.2d 610, 613 (1948). However, in later cases we refused to indulge in any such presumption in the absence of evidence of an accident or exertion on the job and medical proof of causation. *See Collins v. Lib-*

*erty Mutual,* 561 S.W.2d 456 Tenn.1978) (no presumption that auto accident arose out of employment, where no corroborating evidence and death certificate reports apparent heart attack as cause of death); *Travelers Insurance Co. v. Evans,* 221 Tenn. 199, 425 S.W.2d 611 (1968) (mere presence of employee at employer's convention does not raise presumption that heart attack arose out of employment).

In *R.E. Butts Co. v. Powell,* 225 Tenn. 119, 463 S.W.2d 707 (1971), we held that where "there is ample evidence to conclude that [the employee] was doing the work that he was employed to do at the time he suffered the attack which resulted in his disabling injury," the injury is compensable. Five physicians testified that the normal exertion of the deceased's job, which consisted of securing a loaded truck by throwing fifteen-pound chains over the stacked load, "could have" accelerated or aggravated his heart condition. We said: "There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse," *id.* at 709, and concluded that Powell's injury arose out of employment.

Part of the problem in these heart cases is that medical witnesses are rarely, if ever, able to state their opinions on medical causation, with certainty. New York and Massachusetts have statutory presumptions of causation, which take care of this problem. Georgia, Kansas, New York, and Texas do not even necessarily require medical testimony to establish causation. *See* Larson, *Heart Cases Requiring Medical Evidence,* § 79.54(c). And

> courts in most states have in some cases, held medical testimony [couched in terms of "might have," "could have," "possibly," and similar terms] sufficient to sustain an award; however, many of these same courts have, in other instances, held testimony in these same terms insufficient.

Larson, *Review of Awards,* § 80.32(a). At least one state, Mississippi, has expressly recognized a judicial presumption of causation. *See L.B. Priester & Son, Inc. v. Dependents of Bynum,* 244 Miss. 185, 141

So.2d 246 (1962). The result of these varied approaches is that benefits are awarded in the overwhelming majority of cases in which there is medical testimony that the normal exertion of employment "could have" or "might have" caused acceleration or aggravation of a preexisting heart condition.

Our approach has been to recognize the imprecision of medical proof of causation and hold that medical testimony that the normal physical exertion of employment could have or might have caused the acceleration or aggravation of a preexisting heart condition is sufficient to make out a *prima facie* case that the injury or death arose out of employment. If the employer introduces no evidence to the contrary, the preponderance of evidence supports an award of worker's compensation benefits.

Returning to the facts before us, we find no medical testimony in the record to indicate that the normal exertion of King's employment could have or might have accelerated or aggravated his heart condition. It follows that the evidence preponderates against the judgment of the trial court that King's death arose out of employment.

Accordingly, the trial court's judgment awarding worker's compensation death benefits is reversed, and the case is dismissed. Costs are taxed to the appellee.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.