**Jo Frances LUEDTKE, surviving spouse of Richard Luedtke, deceased, Applicant,**

v.

**TRAVELERS INSURANCE COMPANY, Respondent.**

Supreme Court of Tennessee, Special Workers' Compensation Appeals Panel.

August 2000 Session.

Dec. 15, 2000.

Joseph M. Dalton and Catherine S. Hughes, Nashville, TN, for the Applicant, Jo Frances Luedtke.

Sean Antone Hunt, Spicer, Flynn, & Rudstrom, PLLC, Nashville, TN, for the Respondent, Travelers Insurance Company.

### JUDGMENT

PER CURIAM.

This case is before the Court upon Travelers Insurance Company's motion for re-

view pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be DENIED; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Court further recommends that the Special Workers' Compensation Appeals Panel opinion be published.

Costs will be assessed to Travelers Insurance Company for which execution may issue if necessary.

DROWOTA, J., not participating.

DROWOTA, J., delivered the opinion of the court, in which JOHN A. TURNBULL, Sp.J. and FRANK G. CLEMENT, Jr., Sp. J., joined.

## OPINION

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel in accordance with Tenn.Code Ann. § 50–6–225(e) for hearing and reporting findings of fact and conclusions of law. In this case, the plaintiff sued for benefits following the death of her husband, the employee. The employee died of a heart attack while at work. The trial court found that the employee was exerting himself, but that there was no causal connection between the exertion and his death. This Panel has concluded that the trial judge was incorrect in finding that the exertion was not linked to the employee's death. We find that death or disability arises out of and in the course of employment when the exertion of the employee's work causes the heart attack, or aggravates a preexisting condition. It makes no difference that the employee suffered from a preexisting heart disease or that the attack resulted from ordinary exertion of the employee's work.

The deceased employee, Richard Luedtke, worked as a professional painter for Harold Moore and Sons Painting. Harold Moore and Sons worked as the painting subcontractor for renovations to the Massey Auditorium at Belmont University in Nashville. The project was to be completed by the latest on August 6, 1997, as that date was scheduled for an important campus event. Due to the deadline, the job was stressful for everyone involved. Because the renovations were behind schedule, Luedtke worked overtime to complete the job on time. In fact, Luedtke had worked fifteen of the sixteen days prior to his death.

On the morning of September 24, 1997, Luedtke was sanding the auditorium doors and had been doing so for about an hour and a half. A co-worker, Doug Russell, was working next to Luedtke at the time. Russell turned and noticed that Luedtke was "laying on the floor." Attempts to resuscitate Luedtke were unsuccessful. Luedtke was pronounced dead at Vanderbilt University Medical Center of a heart attack.

Luedtke first became aware of possible heart problems when he was hospitalized for another ailment in May 1996. Throughout 1996, Luedtke's heart condition was asymptomatic. However, in the two months prior to his death, Luedtke began to show symptoms of possible heart failure. The symptoms included fainting twice, coughing up fluid, and fatigue. From the time he discovered heart problems until his death, Luedtke was reluc-

tant to seek treatment. Two months had passed between the time that Luedtke's symptoms began to appear and the date of an appointment for treatment with Dr. John Ververis, September 24, 1997. Luedtke did not make this afternoon appointment, because he died that morning. Luedtke's wife, Jo Frances Luedtke (hereinafter "the plaintiff"), brought this suit for workers' compensation benefits.

At trial, the parties introduced the depositions of three doctors into evidence. Two of the doctors, Robert B. Gaston, M.D. and John Ververis, M.D., were Luedtke's treating physicians. The other, Leon H. Ensalada, M.D., never examined Luedtke. Dr. Ensalada based his diagnosis on the medical records and on the transcript of Dr. Ververis's deposition.

Dr. Gaston was Luedtke's primary care physician and first saw Luedtke in April 1996. Dr. Gaston reported that upon examination Luedtke's lungs and heart appeared normal and that Luedtke did not complain of any symptoms associated with heart problems. Dr. Gaston diagnosed a perirectal abscess and suggested surgery.

Dr. Gaston sent Luedtke to a general surgeon, Dr. LeNeve, who detected Luedtke's irregular heartbeat. Dr. Gaston saw Luedtke again in June 1997. According to Dr. Gaston's records, nothing suggested that Luedtke suffered from any discomfort or symptoms indicative of heart problems.

During preparation for the April 1996 surgery with Dr. LeNeve, tests revealed that Luedtke suffered premature ventricle contractions or an irregular heartbeat. Dr. Ververis, Luedtke's cardiologist, cleared Luedtke for surgery but scheduled an appointment to follow up treatment on May 8, 1996. At the examination, Dr. Ververis performed an arteriogram and diagnosed severe dilated cardiomyopathy or a weak heart.

Luedtke received no other treatment for his heart and died on September 24, 1997. Testifying about Luedtke's condition at the time of his death, Dr. Ververis felt that Luedtke's condition was so severe that any activity, including walking or sleeping could have contributed to congestive heart failure. However, Dr. Ververis testified within a reasonable degree of medical certainty that the activity of sanding door jambs probably brought about the heart attack.

Eight days before the trial, the defendant deposed another physician, Dr. Ensalada, to corroborate portions of Dr. Ververis' testimony. Dr. Ensalada never examined Luedtke; however, Dr. Ensalada reviewed Luedtke's medical records and Dr. Ververis's evidentiary deposition. Dr. Ensalada concluded that ventricular fibrillation or a fatally abnormal heartbeat caused Luedtke's death. Dr. Ensalada repeatedly denied that the decedent's exertion played any role in his heart failure.

From the evidence, the trial judge found that "Luedtke was physically exerting himself at the time he died," but that the plaintiff failed to show causation between the deceased's heart failure and his employment. Thus, benefits were denied.

## I.

The plaintiff states two issues for review. The first is whether the trial court erred in denying the plaintiff's motion *in limine* seeking to exclude the evidentiary deposition testimony of Dr. Ensalada pursuant to Rule 703 of the Tennessee Rules of Evidence. The second is whether the trial court erred in finding that Luedtke was engaged in physical exertion on the job when he died of a heart attack, but that such attack and resulting death were not precipitated by the physical exertion of Luedtke's job.

■ The plaintiff's position that Dr. Ensalada's testimony by deposition should be excluded as evidence is not supported by any case law. Rule 703 of the Tennessee Rules of Evidence allows an expert to base opinions on facts not admissible in evidence. Tenn.R.Evid. 703. Although Dr. Ensalada was not Luedtke's treating physician, Rule 703 can not block his testimony. *See Haley v. Dyersburg Fabrics, Inc.,* 729 S.W.2d 665, 667 (Tenn.1987). The fact that Dr. Ensalada is not the treating physician, and that his speciality is in pain management, and not in internal medicine or cardiology, goes to credibility and weight, not admissibility.

■ Turning to the second issue this Court has addressed liability for workers' compensation following a heart attack many times. In *Bacon v. Sevier Co.,* 808 S.W.2d 46 (Tenn.1991), this Court determined liability for a heart attack caused by emotional stress. *Id.* at 49. In doing so, the Court succinctly explained the rule for heart attacks precipitated by physical exertion:

> When the precipitating factor is physical in nature, the rule is well settled that if the physical activity or exertion or strain of the employee's work produces the heart attack, or aggravates a preexisting heart condition, the resulting death or disability is the result of an accident

arising out of and in the course and scope of the employment. It makes no difference that the employee, prior to the attack, suffered from a preexisting heart disease, or that the attack was produced by only ordinary exertion or the usual physical strain of the employee's work.

*Id.* (citations omitted).[1]

The defendant argues that the decedent was not under any unusual strain, that the state of his disease was the sole cause of his death, and that Luedtke was reluctant to undergo medical treatment. However, there need not be any "extraordinary exertion or unusual physical strain" to permit recovery. *Id.* at 50 (citations omitted). Also, Luedtke's failure to seek medical treatment does not affect the right of recovery. *Chapman v. Employers Ins. Co. of Ala.,* 627 S.W.2d 122, 123 (Tenn.1981).[2] Rather, causation is the hurdle to be cleared before recovery is granted. Further, absolute certainty in medical proof on causation is not necessary since "expert opinion must always be more or less uncertain and speculative." *Id.; see also American Ins. Co. v. Ison,* 538 S.W.2d 382, 385 (Tenn.1976).

The plaintiff introduced medical proof that Luedtke's death was causally related to his workplace exertion. The defendant introduced proof to dispute the plaintiff's

1. The defendant's brief asserts that *Bacon* stands for the proposition that before a heart attack is compensable under workers' compensation there must be an "unexpected result." The defendant mistakenly cites a passage from *Bacon* discussing "heart attacks which are precipitated by emotional stress, worry, or tension, without any physical exertion or strain." *Bacon,* 808 S.W.2d at 50. As relevant to this case, no unexpected result is required for heart attacks caused by physical exertion. *Id.*

2. As discussed in *Chapman,* the failure of an employee to seek medical treatment does not affect the right of recovery. Concerning an employee who refused to undergo open heart surgery, this Court held:

> An injured employee is not under a duty to submit to an operation in order that the pecuniary obligation created in his favor against his employer may be minimized when such operation is attended with serious risk of life or member or where there is a difference of medical opinion as to the advisability and result of such operation.

*Chapman,* 627 S.W.2d at 124 (citations omitted). In this case Dr. Ververis felt Luedtke should have had open heart surgery.

experts. The trial court held that "Luedtke was exerting himself at the time of his death," but that "the plaintiff has not demonstrated that it was that exertion that caused his death." However, there was medical proof that linked the heart attack to the exertion. Dr. Gaston, the treating physician, stated that overexertion could lead to cardiac arrest. Dr. Ververis stated that "something was going to take him, whether it was at home or at work. He was going to eventually die of heart disease. Any type of activity could have precipitated heart failure or heart attack...." Dr. Ververis went on to state that the activity of sanding probably brought about the heart attack. However, the defendant asserts that Dr. Ververis' position is that exertion could not have caused Luedtke's death. The defendant's expert, Dr. Ensalada, stated that Luedtke's death could not have been caused by exertion based upon a negative stress test performed on Luedtke on July 23, 1996.

The trial court agreed with the defendant and Dr. Ensalada and found "that the plaintiff's death was caused by the natural progression of the disease." However, the plaintiff asserts that the preponderance of the evidence points in the other direction. Both the decedent's treating physician and his cardiologist state that physical exertion could have or probably caused Luedtke's death. Only Dr. Ensalada is unwilling to state that the cause of the heart attack could be due to physical exertion.

Although the trial court's findings must be given considerable deference concerning the weight and credibility of witnesses' testimony when they testify live, "where the issues involve expert medical testimony and all the medical proof is contained in the record by deposition, as it is in this case, then this Court may draw its own conclusions about the weight and credibili-

ty of that testimony." *Krick v. City of Lawrenceburg,* 945 S.W.2d 709, 712 (Tenn. 1997).

In *Downen v. Allstate Ins. Co.,* 811 S.W.2d 523 (Tenn.1991), this Court held that "medical witnesses are rarely, if ever, able to state their opinions on medical causation, with reasonable certainty." *Id.* at 525 (citing *King v. Jones Truck Lines,* 814 S.W.2d 23, 28–29 (Tenn.1991)). Furthermore, "medical testimony that the normal exertion of employment could have or might have caused the acceleration or aggravation of a preexisting heart condition is sufficient to make out a *prima facie* case that the injury or death arose out of employment." *Id.* In a case cited by neither party, this Court held "that an award may properly be based upon medical testimony to the effect that a given incident 'could be' the cause of the employee's injury, when there is also lay testimony from which it reasonably may be inferred that the incident was in fact the cause of the injury." *Reeser v. Yellow Freight System, Inc.,* 938 S.W.2d 690, 692 (Tenn.1997) (citation omitted).

The defendant asserts that the decedent's condition was so severe that any exertion would have caused Luedtke's death. However, even if a slight exertion caused Luedtke's death, the claim is still compensable so long as the exertion is work-related: "The aggravation, acceleration, or exacerbation of a pre-existing condition or disease brought about by an accidental injury or occupational disease is compensable." *Thomas v. Aetna Life & Cas. Co.,* 812 S.W.2d 278, 284 (Tenn.1991) (citing *Swift & Co. v. Howard,* 186 Tenn. 584, 212 S.W.2d 388 (1948)). The rule for workplace heart attacks "is well established that 'an employer takes the employee as he finds him, that is, with his defects and pre-existing afflictions.'" *King,* 814 S.W.2d at 27 (citation omitted).

Furthermore, a heart attack is compensable "where 'there is ample evidence to conclude that [the employee] was doing the work that he was employed to do at the time he suffered the attack which resulted in his disabling injury.'" *Id.* at 28 (citation omitted). The testimony of Drs. Gaston and Ververis fulfill the preponderance of the evidence burden of a causal connection between the exertion of sanding door jambs and Luedtke's death. Luedtke's physical exertion was the cause of his heart attack.

## II.

In order to avoid the expense and delay associated with a remand, we will calculate the benefits due the plaintiff. Since this case does not involve any dependent children, the applicable statutory provision to determine the plaintiff's weekly compensation rate is Tenn.Code Ann. § 50–6–210(e)(1), which provides as follows: "If the deceased employee leaves a surviving spouse and no dependent child, there shall be paid to the surviving spouse fifty percent (50%) of the average weekly wages of [the] decedent." Tenn.Code Ann. § 50–6–210(e)(1). Luedtke's average weekly wage was $525.50; therefore, half of his average weekly wage, $262.75, is the workers' compensation weekly rate.

The only limitation on death benefits to dependents is that the compensation be paid during dependency and must not exceed the maximum total benefit. *Jones v. General Accident Ins. Co.*, 856 S.W.2d 133, 134 (Tenn.1993). Benefits are to be paid until the statutory maximum is reached or until the surviving spouse dies or remarries. *Id.* at 134–35. The applicable maximum total benefit referred to in Tenn. Code Ann. § 50–6–210(e)(10) is found at Tenn.Code Ann. § 50–6–102(6).[3] The plaintiff's maximum total benefit is the maximum weekly benefit, $350.34,[4] multiplied by 400 weeks, or $140,133.34. *See* Tenn.Code Ann § 50–6–102(a)(6)(C). Thus, the plaintiff shall be paid $262.75 per week until she dies, remarries, or the maximum total benefit is reached.

Finally, we conclude that the plaintiff is entitled to burial expenses of $4,500 dollars and medical expenses of $1,384.04.[5] Tenn. Code Ann. § 50–6–204(c). The judgment of the trial court is reversed. Costs on appeal are taxed to Travelers Insurance Company.

---

3. The maximum total benefit "[f]or injuries occurring on or after July 1, 1992 is four hundred (400) weeks times the *maximum weekly benefit." Spencer v. Towson Moving & Storage*, 922 S.W.2d 508, 510 (Tenn.1996) (emphasis in original); *see also* Tenn.Code Ann. § 50–6–102(6)(C).

4. The maximum weekly benefit is "sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wage up to one hundred percent (100%) of the state's average weekly wage as determined by the department of employment security." Tenn.Code Ann § 50–6–102(a)(7)(A)(viii). In 1997, at the time of Luedtke's death, the state's average weekly wage was $517. Luedtke's average weekly

wage was $525.50, two thirds of which is $350.34. Since two-thirds of Luedtke's average weekly wage is below the 1997 average weekly wage for the state, the state's average weekly wage is not a factor. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 623 (Tenn. 2000); *Spencer*, 922 S.W.2d at 510. Although not relevant here, the minimum weekly benefit is "fifteen percent (15%) of the state's average weekly wage," or $77.55 per week. *See* Tenn.Code Ann § 50–6–102(a)(8)(E).

5. The medical expenses include an ambulance charge, $518.62, and emergency room care, $865.42.