

**FILED**
**Apr 16, 2019**
**02:25 PM (CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Mattie Mitchell, as Representative for the Estate of Michael Mitchell | ) Docket No. 2016-08-1131 |
| | ) |
| | ) State File No. 92588-2015 |
| v. | ) |
| | ) |
| Bunge North America, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Deana C. Seymour, Judge | ) |

---

### Affirmed and Certified as Final - Filed April 16, 2019

---

This is the third appeal of this case. The employee, a supervisor at a grain processing facility, suffered a heart attack and died while at work. The employee's surviving spouse brought a claim for death benefits, asserting the employee's heart attack was due to work-related physical exertion, environmental exposures, and mental stress. The employer filed a motion for summary judgment, which the trial court denied. We vacated the trial court's decision and remanded the case for additional findings consistent with Rule 56.04 of the Tennessee Rules of Civil Procedure. The trial court subsequently issued an amended order denying summary judgment and identifying specific factual disputes concerning each of the surviving spouse's three theories of recovery. That decision was affirmed on appeal. Following a trial, the court ruled the employee's surviving spouse failed to prove the heart attack arose primarily out of the employment and denied her claim for death benefits. The surviving spouse has appealed. We affirm the trial court's decision and certify the court's order as final.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Julian T. Bolton, Memphis, Tennessee, for the employee-appellant, Mattie Mitchell as Representative for the Estate of Michael Mitchell

S. Newton Anderson and Cameron M. Watson, Memphis, Tennessee, for the employer-appellee, Bunge North America

## Factual and Procedural Background

Michael Mitchell ("Employee") worked as a grain elevator laborer and superintendent for Bunge North America ("Employer") from 1984 to November 1, 2015 when he died from a heart attack while at work. He spent approximately ten years prior to his death working as a superintendent for Employer. Employer maintained that Employee did not engage in any strenuous activity on the day of the heart attack and declined to pay workers' compensation benefits.[1]

Employee's surviving spouse ("Claimant") asserted the heart attack was a compensable injury because it was caused by physical exertion, grain dust inhalation, and mental stress. She claimed that Employee was the only superintendent on site that day and had been "all over the place." She further alleged that Employee was "stressed out" about being required to use a computer system he was having difficulty learning.

Employer filed a motion for summary judgment on September 13, 2017. The trial court found there were disputed issues of material fact but failed to identify them. We remanded the case to the trial court to make additional findings consistent with Rule 56.04 of the Tennessee Rules of Civil Procedure. *See Mitchell v. Bunge North America*, No. 2016-08-1131, 2018 TN Wrk. Comp. App. Bd. LEXIS 3 (Tenn. Workers' Comp. App. Bd. Feb. 7, 2018). The trial court subsequently issued an order with the requisite findings, which we affirmed on appeal, concluding Claimant had presented sufficient evidence of disputed facts to survive summary judgment. *See Mitchell v. Bunge North America*, No. 2016-08-1131, 2018 TN Wrk. Comp. App. Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2018). Upon remand, the case was tried.

### *Lay Testimony*

At trial, Claimant argued that physical exertion, environmental exposures, and/or mental stress caused Employee's heart attack and death. She described her husband's exhaustion at the end of each workday and the pain he endured from a prior work-related knee injury. She also discussed his headaches and sinus problems, which she attributed to grain dust inhalation at work. Employee's daughters testified about helping their father with computer work due to his lack of computer skills and about the dusty environment in which he worked.

Claimant also presented the testimony of Roy Payne and Darnell Mitchell, Jr., as well as the deposition testimony of Gregory Thomas. Mr. Payne and Mr. Thomas worked with Employee and were with him when he suffered the heart attack. Neither recalled Mr. Mitchell performing strenuous work that day. However, while

---

[1] There is no dispute Employee's heart attack occurred in the course of his employment. The question in this appeal is whether it arose primarily out of the employment.

acknowledging that Employee had not performed any strenuous activities at work on the day of his death, Mr. Payne remembered Employee engaging in strenuous labor in the days prior to the heart attack. Through an affidavit made an exhibit to his deposition, Mr. Payne explained that Employee had made a repair in the "Texas House" a day or two before he died and that the work caused him to sweat, cough, and have difficulty breathing. Mr. Payne testified that, despite Employee's supervisory position, he worked hard, sometimes ten to twelve hours per day, seven days a week during harvest season. Mr. Payne also testified about the dustiness of the work environment and the problems Employee had walking up stairs. He further testified that he heard Employee's supervisor chastise him for his inability to learn a new computer system.

At the time of Employee's death, Employee, Mr. Thomas, and Mr. Payne were "just small-talking" in the scale office. Although Mr. Thomas and Mr. Payne gave varying estimates of how long they had been speaking, ranging from five to twenty minutes, it is clear from their testimony that, in the period of time immediately preceding Employee's death, he had not been engaged in any physical labor. In fact, Mr. Payne indicated it had been an "easy laid back day" and that Employee had stayed in his office.

Darnell Mitchell, Jr., Employee's brother, also worked for Employer. He estimated they worked fourteen-hour days, seven days a week during harvest season, and he discussed the dusty environment in which they worked. He indicated, however, Employee's office was not dusty and stated the facility had an elevator so employees did not have to climb stairs. Employee's brother worked in an isolated area of the facility and only saw him briefly on the day of his death.

Employer called Employee's supervisor, John Cordel, as well as a former safety manager, David Bagley, as witnesses. Mr. Cordel testified that the day Employee died had been a slow work day. He admitted that, as superintendent, Employee would make repairs if something broke, but stated that otherwise his duties did not involve heavy work. Instead, his job mainly consisted of sampling grain for quality, operating the scales, and overseeing the operations.

Employer's witnesses acknowledged Employer had implemented a new computer system about a year before Employee's death and, shortly after implementation, directed superintendents to learn and use the new system. They testified that Employer made training available, and Mr. Bagley testified that he offered Employee additional training, which he refused. Mr. Cordel indicated another superintendent helped Employee with extra training. Mr. Cordel denied ever threatening Employee's job or complaining to upper management about his lack of computer skills, though he acknowledged the two of them had discussed Employee's lack of proficiency and the importance of learning the new system.

Mr. Bagley and Mr. Cordel further testified that Employer had a dust removal system to comply with governmental requirements. Mr. Bagley testified that he knew of no complaints about air quality at the facility and commented that he never wore a mask at the facility. Mr. Bagley also stated the scale office had no more dust in it than would be found in a house.

*Medical Evidence*

Following Employee's death, Claimant requested an autopsy to verify the cause of death. Dr. Thomas Deering performed the autopsy and indicated Employee had suffered from "extensive cardiac disease with prior stent placement," as well as "hypertension and a remote muscle injury of the thigh." Dr. Deering also found evidence of aortic atherosclerosis and "pulmonary edema of the lungs," which he associated with the heart disease. The autopsy also revealed Employee suffered from mild pulmonary emphysema but did not suffer work-related lung disease. Dr. Deering concluded "the cause of death is atherosclerotic and hypertensive cardiovascular disease." He further noted "[c]ontributing to the death is pulmonary emphysema" and "[t]he manner of death is natural."

Subsequently, both Claimant and Employer obtained expert medical opinions regarding the cause of Employee's heart attack. Claimant sought a causation opinion from Dr. Joseph Weinstein, who had been Employee's treating cardiologist prior to his death. In a June 14, 2017 report, Dr. Weinstein noted Employee's "increased workload" and "stress in the workplace" and concluded that "because [Employee's] death occurred at work, his myocardial infarction and subsequent death were work related." In his subsequent deposition, Dr. Weinstein stated that stress increases blood pressure and "can lead to something called plaque rupture, which we feel in the majority of instances is how a heart attack occurs."

On cross-examination, Dr. Weinstein admitted Employee suffered from a number of pre-existing medical conditions unrelated to his work, including obesity, a history of tobacco use, coronary atherosclerosis, left ventricular dysfunction, and hyperlipidemia. When asked about work-related stressors, Dr. Weinstein testified that he would describe those as "contributing," but not necessarily "precipitating," causes of Employee's heart attack. Finally, Dr. Weinstein admitted he was unaware of any "acute sudden or unexpected event" on the day of the heart attack. He also indicated Employee's heart attack could have happened at home.

Claimant also presented the opinion of another cardiologist, Dr. Jesse McGee, regarding the cause of Employee's heart attack. In Dr. McGee's November 8, 2016 report, he described Employee's physical stress and environmental conditions at work as "a primary contributor" to his death. He identified long work hours, exposure to grain dust, and climbing stairs as physical stressors that contributed to Employee's heart attack.

4

In his deposition, Dr. McGee noted that Employee suffered from "physical and emotional stress on his job" and opined that this was a "significant contributing factor" to the heart attack. He testified that "[s]omething happened that stressed him out, and when you become stressed, your heart rate and your blood pressure can go up and that certainly can contribute to a plaque rupture." Dr. McGee concluded that "[Employee's] physical, environmental, and emotional stress related to his employment over time contributed [to] and aggravated his coronary atherosclerotic heart disease."

On cross-examination, Dr. McGee admitted it was not possible to tell from the autopsy findings whether Employee's heart attack was caused by acute or chronic factors. He further admitted that an acute event typically occurs ten to fifteen minutes before a heart attack, and he was unaware of any acute event that occurred on the day of Employee's death. He also agreed that when he described in his report Employee's physical stress and environmental conditions at work as "a primary contributor" to his death, he was referring to "long term exposure . . . over years" to such conditions, and not any acute event. Additionally, Dr. McGee did not realize when he gave his opinion that Employee worked in a supervisory capacity. Finally, Dr. McGee admitted he had no training in pulmonology.

Employer's medical expert, Dr. Keith Anderson, a cardiologist, concluded in a May 8, 2017 report that exposure to grain dust and emotional stress at work "did not contribute to the development of atherosclerotic heart disease or the progression of this disease." He further opined that "there is no relationship between grain dust exposure or between chronic work stress and his myocardial infarction." Because there was "no identifiable activity preceding this event which could be identified as a trigger for his myocardial infarction," Dr. Anderson concluded that "[t]o a reasonable degree of medical certainty, [Employee's] employment had no causal relationship to his death." He also indicated that a triggering activity would have occurred "in the minutes preceding his heart attack."

After considering both the lay and expert evidence, the trial court concluded that Claimant had failed to establish by a preponderance of the evidence that Employee's heart attack arose primarily out of his employment. Specifically, the court determined Claimant could not prevail on her contention that physical exertion caused Employee's heart attack because there was no evidence Employee performed any physical labor on the day of his heart attack. Additionally, the court determined the mental stress alleged by Claimant, namely pressure to learn the new computer program, was the type of ordinary stress associated with Employee's job and was therefore not compensable. Further, the court found the medical experts' testimony on dust inhalation's connection to heart attacks inconclusive and found the lay witness testimony on the level of dust at Employer's facility similarly equivocal. Accordingly, the court concluded Claimant could not prevail on her theory that dust inhalation caused Employee's heart attack. Claimant has appealed.

5

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Claimant challenges the trial court's conclusion that she did not present sufficient evidence establishing Employee's heart attack arose primarily out of his employment. In so doing, Claimant raises several issues on appeal, the first of which we restate as two distinct issues: (1) whether establishing causation requires proof of a specific, acute event preceding the heart attack, and (2) whether the trial court erred in accepting Dr. Anderson's causation opinion. Additionally, Claimant asserts that the trial court should have "weighed [her] medical experts' testimony on the causal impact of grain dust inhalation (rather than requiring a pulmonologist)." Finally, Claimant contends that the trial court should have "considered the alleged work-related causes cumulatively, rather than considering each in isolation." We find no merit in any of these issues.

### *Causative Event*

This is the first heart attack case to come before us on its merits under the Reform Act of 2013.[2] Under the Act, a compensable injury is defined as "an injury by accident, a mental injury, occupational disease including diseases of the heart, lung and hypertension . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment." Tenn. Code Ann. § 50-6-

---

[2] We previously issued a memorandum opinion in a heart attack case, *Hancock v. Federal Express Corporation*, No. 2017-08-1354, 2018 TN Work. Comp. App. Bd. LEXIS 52 (Tenn. Worker's Comp. App. Bd. Sept. 11, 2018), summarily affirming the trial court's denial of benefits because the appellant failed to file a transcript or statement of the evidence and made no substantive argument on appeal.

6

102(14) (2018).   An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes."   Tenn. Code Ann. § 50-6-102(14)(B).   Further, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course of employment."  Tenn. Code Ann. § 50-6-102(14)(A).

In addition, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes."   Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility."  Tenn. Code Ann. § 50-6-102(14)(D).

Mindful of these statutory parameters, we note that claims for work-related heart attacks are categorized into two groups in Tennessee: (1) those where the heart attack is precipitated by physical exertion or strain, and (2) those where the heart attack results from mental stress, tension, or some type of emotional upheaval. *Clark v. Nashville Mach. Elevator Co.*, 129 S.W.3d 42, 47 (Tenn. 2004).   Regarding the first category, physical exertion or strain, historically it made no difference that the employee, prior to the attack, suffered from pre-existing heart disease, or that the attack was produced by only ordinary exertion or the usual physical strain of the employee's work.   In other words, "no extraordinary exertion or unusual physical strain need[ed to] be established in order to obtain a recovery."  *Bacon v. Sevier Cty.*, 808 S.W.2d 46, 50 (Tenn. 1991). Instead, the "causational key to recovery" turned on whether the heart attack was "precipitated by a physical activity or exertion or physical strain on the employee's job," and "there is invariably medical proof of some specific act, incident, or event" that triggered the attack. *Id.* at 50.

However, the Reform Act of 2013 changed the definition of a compensable injury from that applicable when *Bacon* was decided.  As previously noted, under the Reform Act, an injury must now "arise *primarily* out of and in the course and scope of employment."  Tenn. Code Ann. § 50-6-102(14) (emphasis added).  Thus, while it still makes no difference that the employee, prior to the heart attack, suffered from pre-existing heart disease or that the heart attack was precipitated by the usual physical strain of the employee's job, the proof must now establish the heart attack arose *primarily* from the employment considering all causes.  The Reform Act is clear that an injury "shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment."   Tenn. Code Ann. § 50-6-102(14)(A).

7

In the second category of heart attack claims involving emotional stress, worry, or shock, "the heart attack must be immediately precipitated by a specific acute or sudden stressful event, rather than generalized employment conditions." *Bacon*, 808 S.W.2d at 52. Although excessive and unexpected stress and worry that can be attributed to the employment may justify an award of benefits, *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997), "the ordinary stress of one's occupation does not because '[e]motional stress, to some degree, accompanies the performance of any contract of employment,'" *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 136-37 (Tenn. 2001) (quoting *Allied Chem. Corp. v. Wells*, 578 S.W.2d 369, 373 (Tenn. 1979)). In other words, "[n]ormal ups and downs are part of any employment relationship and . . . do not justify finding an 'accidental injury' for purposes of worker[s]' compensation law." *Bacon*, 808 S.W.2d at 53. "Accordingly, the well-settled rule in Tennessee is that physical or mental injuries caused by worry, anxiety, or emotional stress of a general nature or ordinary stress associated with an employee's occupation are not compensable." *Brown v. Zurich Am. Ins. Co.*, No. E2016-00237-SC-R3-WC, 2017 Tenn. LEXIS 267, at *7 (Tenn. Workers' Comp. Panel Apr. 21, 2017). Instead, with respect to this second category of claims, the proof must establish that the heart attack resulted from a stressful incident of abnormal or unusual proportions arising primarily out of the employment rather than the day-to-day mental stresses and tensions experienced by an employee as part of his or her job.

As this discussion illustrates, and contrary to Claimant's position, evidence of an event precipitating a heart attack is required in both categories of heart attack claims. The difference lies in the type of event that precipitates the attack. While heart attacks involving physical stressors require physical activity or exertion which may be ordinary in nature, heart attacks involving emotional stressors require abnormal or unusual incidents.[3]

Here, Claimant argues Employee's heart attack resulted from both physical and emotional stressors. However, there is no evidence of physical exertion – whether ordinary or extraordinary in nature – that may have produced Employee's heart attack. Although Employee was known to work hard, none of his co-workers recalled him performing physical work on the day of his heart attack. Instead, his co-workers testified that the day Employee died had been "an easy laid-back day," and Employee had been in the scale room talking to his co-workers for five to twenty minutes before his heart attack. Claimant has not identified any physical exertion or activity that would have

---

[3] Claimant relies on two cases, *Luedtke v. Travelers Ins. Co.*, 100 S.W.3d 188 (Tenn. Workers' Comp. Panel 2000) and *Clark v. Nashville Machine Elevator Co.*, 129 S.W.3d 42 (Tenn. 2004), for the proposition that no acute event is required to show causation. We agree with Claimant to the extent that when a heart attack arises primarily from physical exertion or strain, only ordinary exertion or the usual physical strain of the employee's work need be shown. We also note that both cases cited by Claimant involve employees who performed physical exertion the day of their heart attacks. In the present case, there is no such proof.

8

precipitated the heart attack on the day it occurred. In fact, there is no proof of any physical exertion or a stressful event that entire day.

The proof is likewise insufficient to establish the type of emotional or mental stressor that could result in a compensable heart attack.[4] While Employee may have been under stress due to learning a new computer system, there is no evidence that a sudden or unusual stressful event occurred that triggered his heart attack. Indeed, stress related to learning the new computer system is the kind of ordinary stress of Employee's job, especially as a supervisor responsible for helping run the facility, that is not compensable under our workers' compensation law. As such, Claimant has failed to establish that either a work-related physical stressor or mental stressor was the primary cause of Employee's heart attack. We also note that the mere presence of an employee at the place of employment at the time of an injury is not sufficient to establish causation. *Clark*, 129 S.W.3d at 47.

*Dr. Anderson's Testimony*

Claimant also takes issue with the trial court's reliance upon Dr. Anderson's testimony that an acute event usually precedes a heart attack. She argues that Dr. Anderson's "hyper-focus[] on identifying a 'trigger point'" was erroneous and suggests his record review and the fact that he never treated Employee lessens his credibility in comparison to her medical experts.

In considering whether physical exertion caused Employee's heart attack, the trial court considered the testimony of all the medical experts. The court acknowledged Dr. Weinstein's and Dr. McGee's testimony that working long hours and climbing stairs were contributing factors to Employee's heart attack, but there was no evidence that Employee had climbed stairs instead of using the elevator on the day of his heart attack.

Moreover, the trial court accredited Dr. Anderson's assertion that if physical exertion had been a factor, the exertion would have occurred "in the minutes preceding his heart attack." Claimant's expert, Dr. McGee, agreed that an act causing a heart attack usually precedes the attack "certainly within . . . ten to fifteen minutes." He also agreed that when he described in his report Employee's physical stress and environmental conditions at work as "a primary contributor" to his death, he was referring to "long term exposure . . . over years" to such conditions and not to any acute event. Again, the evidence does not indicate any physical exertion, ordinary or otherwise, leading up to Employee's heart attack at any time on the day of his death. Instead, the evidence is that

---

[4] The primary focus of Claimant's brief is whether the trial court erred in evaluating whether physical stressors resulted in Employee's heart attack. Nonetheless, we choose to also address the merits of Claimant's emotional stress theory.

9

the day had been slow and "laid-back" and that Employee had been talking in the scale office for five to twenty minutes prior to his heart attack.

In short, we find no error in the trial court's reliance on Dr. Anderson's testimony that acute events typically precipitate heart attacks or in the trial court's reliance on Dr. McGee's substantially similar testimony. Additionally, Claimant fails to explain how Dr. Anderson's record review was deficient merely because he never treated Employee. Indeed, one of Claimant's own experts, Dr. McGee, also did not treat Employee.

*Dust Inhalation*

In addition to maintaining that physical and mental stressors caused Employee's heart attack, Claimant asserts that Employee's alleged grain dust inhalation contributed to his heart attack and argues that the trial court erred by "requiring a certified pulmonologist to opine about the effects of inhaling grain dust." She further asserts that "[r]ather than weigh[] the available expert testimony on the effect of grain dust," the trial court "summarily disregard[ed]" her medical expert's opinions identifying grain dust as a contributing factor. We disagree.

Despite her claim to the contrary, the trial court did in fact weigh the available expert testimony on the effect of grain dust. As noted by the trial court, the expert medical testimony conflicted as to the role dust inhalation played in Employee's death. Specifically, Dr. Weinstein testified that inhaling dust over a prolonged period could lead to pulmonary emphysema, which the autopsy report listed as a contributing factor in Employee's death, but he also testified he lacked expertise on the subject.

For his part, Dr. McGee indicated that environmental factors such as grain dust exposure contributed to and aggravated Employee's heart disease, but he admitted he was not trained in pulmonology and did not know the particular levels to which Employee had been exposed. Dr. Deering, the physician who performed the autopsy, found no pneumoconiosis, or work-related lung disease. Finally, Dr. Anderson concluded that exposure to grain dust did not contribute to the development or progression of Employee's heart disease or cause his heart attack. After acknowledging the inconclusive expert medical testimony, the trial court observed that neither party produced testimony from a pulmonologist on the relationship between dust inhalation and Employee's heart attack.[5]

---

[5] Claimant contends the trial court "erroneously raised the applicable standard of proof by needlessly requiring a certified pulmonologist to opine about the effects of inhaling grain dust." Contrary to Claimant's argument, we do not interpret the trial court's analysis as *requiring* the testimony of a pulmonologist to satisfy the standard of proof. As noted, while the court did reference the absence of testimony from a pulmonologist, it did so in the context of analyzing all the lay and expert testimony.

The trial court's analysis of this issue did not stop with the medical proof, but also took into account the contradictory lay testimony regarding dust at the facility. According to Claimant's witnesses, grain dust frequently covered the facility. However, Employer's witnesses testified that the facility was not very dusty, and Mr. Thomas specifically noted the clean environment in the scale office, as did Employee's brother. Indeed, the proof was that the scale office had no more dust than one's home. Additionally, Mr. Bagley described the facility's dust removal system as compliant with governmental requirements.

In sum, although the trial court did reference the absence of an opinion from a pulmonologist, the court's analysis demonstrates it considered all of the existing medical testimony and lay testimony and found both inconclusive. The court did not err in concluding Claimant failed to meet her burden of proving, by a preponderance of the evidence, that dust inhalation primarily caused Employee's heart attack.

*Cumulative Analysis*

Lastly, Claimant argues the trial court should have addressed the physical, mental, and environmental stressors cumulatively rather than individually. This argument is likewise without merit.

As previously discussed, heart attack cases involving physical stressors require different proof of causation than those involving mental stressors. Thus, we cannot fault the trial court for analyzing those aspects of the case separately in its order. Even if the trial court had not examined Claimant's theories separately, it would not have benefited Claimant's position because, ultimately, the medical proof viewed as a whole falls short of that required to establish a compensable injury. And, as pointed out by Employer, the workers' compensation statutes are no longer remedial in nature, and employees no longer receive the benefit of a liberal application of the law. *See* Tenn. Code Ann. § 50-6-116. Absent sufficient expert medical proof as mandated by statute, Claimant cannot prevail.[6]

---

[6] Claimant asserts in her brief that "certain core principles remain" after the Reform Act of 2013, including that doubts about causation and whether an injury arises out of the employment should be resolved in favor of the employee. However, the case she cites for this proposition, *Lambdin v. Goodyear Tire & Rubber Co.*, 468 S.W.3d 1 (Tenn. 2015), involved the application of pre-reform law. Prior to the Reform Act of 2013, Tennessee courts did interpret and apply the workers' compensation statutes liberally in favor of employees. *Crew v. First Source Furniture Grp.*, 259 S.W.3d 656, 664 (Tenn. 2008). The practical effect of this approach was that employees received the benefit of the doubt in close cases. However, for injuries occurring on or after July 1, 2014, courts may no longer apply a liberal or remedial interpretation of the workers' compensation statutes, but must apply the law "fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116. Also, the legislature has made it clear that the workers' compensation statutes "shall not be construed in a manner favoring either the employee or the employer." *Id.*

**Conclusion**

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's conclusion that Claimant failed to prove Employee's heart attack arose primarily out of his employment, considering all causes, as Tennessee Code Annotated section 50-6-102(14) requires. The trial court's order is affirmed and certified as final.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Mattie Mitchell, as Representative for the Estate of Michael Mitchell | ) ) | Docket No. 2016-08-1131 |
| | ) | State File No. 92588-2015 |
| v. | ) ) | |
| Bunge North America, et al. | ) ) ) | |
| Appeal from the Court of Workers' Compensation Claims Deana C. Seymour, Judge | ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 16th day of April, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| Julian T. Bolton | | | | | X | bolllaw@aol.com |
| S. Newton Anderson | | | | | X | sna@spicerfirm.com |
| Cameron M. Watson | | | | | X | cwatson@spicerfirm.com |
| Deana C. Seymour, Judge | | | | | X | via electronic mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | via electronic mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov